Donellan v. Oregon Lumber Co.

JOHN L. DONELLAN, APPELLEE, V. OREGON LUMBER COMPANY, APPELLANT.

FILED FEBRUARY 16, 1922. No. 21641.

Brokers: COMMISSIONS. The plaintiff, a lumber and box broker, undertook to sell box shooks on commission. He secured agreements, which were in the nature of options to the buyer, to purchase shooks in car-load lots at specified prices, the same to be manufactured and shipped on specifications being furnished and orders for shipment being given during the term of contract. *Held*, that plaintiff was only entitled to commission on cars actually ordered and shipped within the time limited; that to be entitled to any further commission he must have secured for the defendant a contract under which the defendant could have compelled acceptance of the additional cars of shooks, on which commission is claimed, or compelled the purchaser to respond in damages.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed*.

*Sears, Horan & Sheppard*, for appellant.

*Matthew Gering, Kenneth S. Finlayson* and *A. L. Tidd,* *contra.*

Heard before MORRISSEY, C. J., ALDRICH, FLANSBURG and ROSE, JJ., BROWN and ELDRED, District Judges.

ELDRED, District Judge.

The plaintiff, a lumber and box broker, brought this action against the defendant in the district court for Douglas county, to recover brokerage commissions on sales alleged to have been made on behalf of the defendant.

The plaintiff in his petition alleges that about June, 1916, the defendant orally employed the plaintiff to sell box shooks, and agreed to pay him a brokerage commission of 5 per cent. on net amount of sales made by him during such employment; that, pursuant to such contract, plaintiff on September 8, 1916, sold for the defendant to Morrell & Company 50 car-loads of box shooks at the total net price of $19,951.20; that plaintiff was entitled to a commission therefor of $997.56, and that there has been paid thereon only $179.61; that on or about September 23, 1916, plaintiff sold for the defendant to the Cudahy Packing Company 350 car-loads of box shooks at a total net price of $162,758.60; that plaintiff was entitled to a commission therefor of $8,137.93, and that there has been paid thereon only $2,855.28.

The defendant for answer alleges that plaintiff submitted to the defendant for its acceptance certain contracts for the furnishing of shooks for the period of one year from and after date of acceptance of contracts; that it agreed to pay the plaintiff on such of the orders as defendant could furnish through its own mills a commission of 5 per cent., and on all shipments furnished thereunder from other mills a commission of 3 per cent.; pleaded the established trade custom of the lumber business through brokers; that plaintiff submitted to the defendant an order from Morrell & Company for said company's requirements of box shooks for a period of

one year, and that the defendant obligated itself to pay plaintiff a commission of 5 per cent. on all shipments under said contract, of its own manufacture, and 3 per cent. on shipments procured by the defendant from other mills; that the defendant shipped Morrell & Company from its own mill 7 car-loads and paid plaintiff commission thereon at the rate of 5 per cent.; that it shipped all cars for which it received specifications and shipping directions during the period of contract; that plaintiff submitted to the defendant an order from the Cudahy Packing Company for said company's requirements of box shooks for the period of one year; that it obligated itself to pay plaintiff a commission of 5 per cent. on all shipments under said order, of its own manufacture, and 3 per cent. on all shipments from other mills; that defendant shipped Cudahy Packing Company from its own mills 53 car-loads of box shooks and paid plaintiff the commission due; that defendant also shipped from other mills 138 car-loads of shooks and paid plaintiff his commission thereon at the rate of 3 per cent.; that it was the duty of the Cudahy Packing Company and plaintiff to furnish specifications and shipping directions; that defendant shipped all cars for which specifications and shipping directions were sent within the time limit of the contract.

There was a verdict and judgment for plaintiff for $4,827.09, and the defendant appealed.

There are numerous assignments of error made by appellant in its brief, some going to the rulings on evidence, and others to the instructions given and refused. These assignments may be condensed into three questions, the determination of which will dispose of the case: (1) What contract was made between the plaintiff and the defendant? (2) What contract was made for the sale of shooks to Morrell & Company? (3) What contract was made for the sale of shooks to the Cudahy Packing Company?

Plaintiff's brokerage contract involves two disputed

contentions: That is, plaintiff claims he was to have a commission of 5 per cent. of the net amount of all cars ordered by the terms of the contract, whether shipped or not; and the defendant claims (a) that plaintiff was entitled to commission on cars ordered and shipped under the contract and within the time specified, that where no specifications or shipping directions were furnished during the time limit, and consequently shipments were not made, then there was no obligation to pay a commission; (b) that the commission was to be 5 per cent. on shooks furnished by defendant from its own mill, and 3 per cent. on shooks furnished through other companies.

The plaintiff in his petition claims that he was to be paid a commission on net amount of "all sales made by him." If the commission was on the "sale," and not merely the securing of an option—and that appears to be the theory on which the petition was drawn and is the only reasonable interpretation that can be put upon the contract—then the right to commission on any cars of shooks not actually ordered shipped during the time covered by contracts depends upon the contracts of Morrell & Company and Cudahy Packing Company. Before the plaintiff was entitled to a commission on any cars not shipped he must have secured for defendant a contract under which defendant could have compelled the acceptance of the additional cars of shooks on which plaintiff claims a commission, or have compelled the purchaser to respond in damages.

The transaction with Morrell & Company was conducted through correspondence. Prior to June 3, 1916, there appears to have been some negotiations between plaintiff, defendant, and Morrell & Company not shown by the record. June 3, 1916, the defendant wrote plaintiff as follows:

"We are handing you herewith contract made out in duplicate properly signed. We request that you check the same over, and we believe that you will find it to be in order and as you intended it, and we ask that you secure

the signature of John Morrell & Company at as early a date as possible, leaving with him one copy for his files and returning the other to us, and we trust that there will be no further delay in this matter, and that we shall receive the document properly executed with shipping instructions at an early date. If there is any part of the contract that is not clear or in line, we will thank you to take it up with us immediately, as we are desirous of knowing just when we shall commence shipment on this contract. We also mention in this letter that if the contract is properly executed by your customer and returned to us, that on all shipments during the life of this contract, a 5% brokerage on the net amount is to be paid to Mr. W. J. Foye of Omaha, Nebraska. This we believe is in line with your request as covered by the contract. If this commission is not to be made payable to Mr. Foye but to yourself, you will kindly advise us. In other words, if you secure this business you are entitled to the 5% brokerage on the net amount of the invoice, less the freight charges."

June 8, 1916, the plaintiff replied to the defendant:

"Am pleased to acknowledge receipt of your courteous favor of the 3d inst. with inclosure of your contract in duplicate for John Morrell & Co. I checked over all the sizes and prices as noted on the contract, and wish to advise that same are correct. As per my letter of the 2d inst., there are several of the export boxes the use of which are now discontinued, while there are five additional boxes, sizes of which I forwarded on the same date awaiting your quotations and which are to be added to the list of export boxes. I am pleased to advise that I will send you an order for the first car for Morrell & Co., within the next few days, and will have the contract properly executed after receiving the additional quotations, adding same to the contract upon instructions from you. Shipments are to commence immediately, and the bulk of their orders are during the winter season, which

should make more desirable business for you as it does not come during the rush season."

The contract was never signed by Morrell & Company, but the draft of contract as offered in evidence is for the term from June 1, 1916, to September 1, 1917, and for "such sawed and dressed western pine shooks as buyer may order for the period above mentioned."

September 4, 1916, Morrell & Company wrote plaintiff as follows:

"We are pleased to advise that we expect to draw about 90% of our box shooks from the Oregon Lumber Co., and as soon as we can get the matter of the few cars for immediate shipment which we will find it necessary to contract for closer to home, will mail you signed contract form. You will please arrange immediately to protect us on a minimum of 30 cars and a maximum of 50 cars at prices quoted, acknowledging receipt of this letter so that we will know that everything is understood between us."

On receipt of the foregoing letter plaintiff wrote the defendant:

"I am pleased to send you herewith copy of letter just received from John Morrell & Company, of Sioux Falls, S. D., also copy of my reply to them. Will allow their letter to me and my reply to act as contract until such time as they are able to forward me formal signed contract, which you will note from their letter should not be very long."

At the same time the plaintiff sent to John Morrell & Company the following letter:

"I am pleased to acknowledge receipt of your valued favor of the 4th inst., advising that you will order from the Oregon Lumber Company box shooks at prices previously quoted, with minimum of 30 cars, maximum 50 cars, and that you will shortly forward contract properly signed. Am pleased to advise that I have sent the Oregon Lumber Company copy of your letter, and that

same will act as contract until your formal signed con-
tract is received."

On September 8, 1916, the defendant replied to plain-
tiff:

"We also note your letter to John Morrell & Company
and their reply back to you, and we appreciate your hav-
ing gotten this business in the shape you have, and we
will protect you on this business and trust that we will
be able to serve Morrell & Company in such a manner
that it will merit their future business."

And on September 11, 1916, the plaintiff wrote the de-
fendant:

"I am pleased to acknowledge receipt of your favor
of the 8th inst., advising that you will protect me on the
Morrell & Company contract."

The foregoing closed the transaction so far as any·
arrangements for a contract was made between the de-
fendant and Morrell & Company. It also contains the
only agreements with reference to the payment of com-
missions on this particular business. The letter of
June 3, 1916, defendant to plaintiff, which is the letter
with which draft of contract was inclosed, provides that
on all shipments during the life of this contract a 5 per
cent. brokerage on net amount is to be paid. Under the
arrangement made, Morrell & Company ordered and de-
fendant shipped seven cars of shooks, and plaintiff was
paid a commission of 5 per cent. on all such shipments.
Later, and after the expiration of term of contract,
Morrell & Company, through plaintiff, ordered another
car; but on their attention being called to the fact that
contract had expired, it was agreed between defendant
and Morrell & Company that car should be shipped, not
under old contract, but was to be considered new busi-
ness. Plaintiff concurred in that arrangement and was
paid a commission on that car. Then, about the same
time, plaintiff endeavored to negotiate another contract
between the same parties for the ensuing year. The
parties to the contract construed it as having expired at

the time the eighth car was ordered, that being a practical construction, and the only logical one, it should control in this case. The defendant shipped all the cars ordered by Morrell & Company, and as there was no contract secured by which Morrell & Company was bound to order any particular number of cars during the term of the contract, we conclude that the plaintiff is entitled to no further commission on account of any sales made to Morrell & Company. The jury should have been so instructed.

The plaintiff secured and submitted to the defendant a draft of contract from the Cudahy Packing Company, which provided that the defendant was—

"To manufacture and sell to the Cudahy Packing Company a minimum of 300, with maximum of 350, cars Oregon pine box shooks to be taken as needed at any of our branches, as per specifications to be furnished. * * * The Cudahy Packing Company, in consideration of the foregoing, hereafter agrees to order and receive from the Oregon Lumber Company, Oregon pine box shooks as above specified, until the above quantity is taken."

The defendant refused to accept the contract but objected to the provisions above quoted, and on September 30, 1916, wrote to the plaintiff:

"We are returning, herewith, memorandum of agreement as drawn up by the Cudahy Packing Company and would ask that same be corrected to read that this quantity of boxes to be ordered out within twelve months from date of acceptance of the same. Our understanding is that they are contracting for one year's supply but according to this they have an option on three hundred and fifty car-loads and there is no period stated when they are to be called for. We do not care to have the contract run for over a year, and it is further to be understood that any amount which has not been taken at time, contract is to be considered filled. We note they have made it a minimum of three hundred or a maximum of three hundred and fifty, while we understood from

their inquiry, that they had a minimum of two hundred and fifty with a maximum of three hundred, but if they insist we will take care of the three hundred and fifty, but want it understood that all is to be called for within twelve months. * * * Please have the Cudahy contract corrected as suggested above."

The plaintiff testified that after receiving that letter he made an effort to have the contract changed in compliance with defendant's request. October 6, 1916, plaintiff wired Cudahy Packing Company:

"Contract satisfactory in all particulars to Oregon Lumber excepting must cover only to end of nineteen seventeen. Will write you fully Saturday also advising car numbers of all shipments from Oregon Lumber and Multnomah am also tracing shipments returning contract for correction will reach you early Monday."

And on October 7, 1916, plaintiff wrote the Cudahy Packing Company:

"Referring to contract for box shooks for your So. Omaha and Sioux City plants which you placed with the Oregon Lumber Company through me, wish to advise that I am in receipt of a letter from the Oregon Lumber Company under date of Sep't 30th, in which they request that the contract be changed to read that the quantity of boxes ordered is to be taken out within twelve months from date of acceptance of the contract. They say they do not care to have the contract run indefinitely, and it is further to be understood that any amount not taken in that time, contract is to be considered filled."

On October 9, 1916, the Cudahy Packing Company wrote to the defendant:

"In connection with our contract Sept. 23d, for 350 cars of box shooks, to be taken as needed, it is understood that deliveries are not to commence until April, 1917, and to continue for a period of one year from that date, when contract will be considered completed."

The plaintiff, on October 10, 1916, wrote the defendant:

"Again referring to your favor of the 30th ult., re-

garding the Cudahy contract, I am returning same to you herewith, with letter of October 9th, in duplicate from their purchasing agent, which is to be made a part of contract, and contains the correction you requested."

And on August 16, 1918, the plaintiff wrote the Cudahy Packing Company:

"Please refer to contract I arranged between your company and the Oregon Lumber Company in 1917, covering 300 to 350 car-loads box shooks. The Oregon Lumber Company has advised that subsequent to my arranging the contract between your two companies, there has been mutual arrangements between your company and the Oregon Lumber Company to the effect that the contract would expire April 1, 1918, and that any specifications that were not in the hands of the Oregon Lumber Company before that date would not be binding on them under the contract. Will you kindly advise me fully regarding the above? I am interested in commissions covering the entire contract arranged, and any subsequent arrangements such as above, have not been concurred in by me or by any waiver from me of commissions in the premises. I am, therefore, anxious to learn the exact status of the matter in question, as my records show that shipments have been made covering only about half the number of cars covered by the contract."

On August 19, 1918, the Cudahy Packing Company replied to the plaintiff as follows:

"If you will refer to correspondence passed between us at the time this contract was made you will notice in your letter of October 7, where we had been requesting you to return the signed contract, you stated that the Oregon Lumber Company did not want to sign the contract for any quantity without a specified time in which to take delivery, but that they would be willing to make the contract for one year from the date of acceptance. We replied to this letter, under date of Oct. 9th to the effect that we understood deliveries were to commence April 1, 1917, and to continue for a period of one year,

when the contract would be considered completed."

The contract above quoted from, as modified and supplemented by the letters set out, is the contract secured by plaintiff for defendant from the Cudahy Packing Company. The plaintiff's right of recovery, for commission on any cars of shooks not ordered shipped within the life of the contract, depends upon the interpretation to be placed thereon.

This evidence shows that, when the contract was originally submitted to the defendant for its approval, it provided for a minimum and a maximum number of cars to be taken as needed by the Cudahy Packing Company, but specified no length of time within which they should be ordered. The defendant refused to accept the contract with those provisions, but insisted that the term of the contract should be limited to one year, and, further, that any amount not taken in that time, contract was to be considered filled. The Cudahy Packing Company agreed to this modification. The plaintiff in his letter of August 16, 1918, to the Cudahy Packing Company intimates that such modification was without his knowledge, and states that it was not concurred in by him; however, the modification was made through correspondence in which the plaintiff took an active part, as shown by the excerpts of letters above set forth. The plaintiff was instrumental in securing the Cudahy Packing Company to agree to the modification requested by the defendant. This contract as modified is the only contract shown to have been consummated between the defendant and the Cudahy Packing Company. The contract as finally agreed upon does not provide for any specific number of cars of shooks to be furnished, but merely that such cars as were ordered shipped during the term of the contract should be furnished. There was in fact no sale of any shooks under this final arrangement until there were specifications furnished and orders for the shipment given; it was merely an agreement in the nature of an option given to the Cudahy Packing Company to purchase shooks at specified prices

during the term of the contract. It appears from the correspondence passing between the plaintiff and the Cudahy Packing Company in August, 1918, that the Cudahy Packing Company as well as the defendant interpreted the contract as being fully performed at the end of the year, regardless of the number of cars furnished. That is the reasonable and practical construction. The defendant shipped all the cars ordered by the Cudahy Packing Company, and as there was no contract secured by which the Cudahy Packing Company was bound to accept any greater number of cars, we conclude that the plaintiff is not entitled to commission for the sale of any shooks in addition to the cars actually ordered and shipped. The jury should have been so instructed.

The plaintiff has been paid by the defendant commission at the rate of 5 per cent. on all cars of shooks furnished by the defendant to the Cudahy Packing Company from its own mills. It appears that there were a number of car-loads of shooks shipped on the Cudahy Packing Company order, under the contract, through mills other than the mills of the Oregon Lumber Company; the defendant has paid a commission of 3 per cent. on those cars, and plaintiff claims that he is entitled to an additional 2 per cent. commission on such cars. The original proposition made by plaintiff to defendant was to secure the orders for a commission of 5 per cent. In a subsequent letter he indicated that he would secure the business for a commission of 3 per cent., but the plaintiff now claims that the writing of 3 per cent. in that letter was a clerical error. The agreement regarding the commission was finally consummated at a meeting in plaintiff's office between plaintiff and one Eccles, the president of the defendant company. These parties both testified as to what was said at that time, but their testimony is in sharp conflict. The defendant, on making shipments under the contract, submitted to plaintiff or his assignee duplicate invoices of the shipments, indicating the place of origin. The plaintiff having assigned his interest

in the commission to one Foye, on a later date made up a tabulated statement showing the commissions on the different shipments, figuring the shipments from defendant's mills at Baker, Oregon, at 5 per cent., and from the other mills on a basis of 3 per cent. He made no complaint or objection direct to the defendant in regard to the amount of commissions allowed him, but claims to have mentioned the matter to the president of the company in a personal interview, and offers some explanations for his actions in failing to object to the 3 per cent. commission, and in making the tabulated statement above referred to. Whether the brokerage contract entitled plaintiff to a commission of 5 per cent. or 3 per cent. on such shipments was a question concerning which different minds might arrive at different conclusions and was properly submitted to the jury.

For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded.

REVERSED.