STATE of South Dakota, Plaintiff
and Appellee,

v.

Thomas D. SEIDSCHLAW, Defendant
and Appellant.

Nos. 13094, 13108.

Supreme Court of South Dakota.

Argued Oct. 17, 1980.

Decided April 1, 1981.

Steve Miller, Minnehaha County Deputy State's Atty., Sioux Falls, Joaquin K. Hanson, Minnehaha County State's Atty., Sioux Falls, on brief for plaintiff and appellee.

Steven W. Sanford, Cadwell, Brende & Sanford, Sioux Falls, for defendant and appellant.

WOLLMAN, Chief Justice.

Appellant was charged with two counts of murder as the result of an automobile accident. The trial court dismissed the murder counts at the close of the State's case but allowed the case to proceed on two counts of first-degree manslaughter. Appellant was found guilty by a jury on both counts and was sentenced to twenty-five years' imprisonment on each count, the sentences to run consecutively. We reverse and remand.

During the early morning hours of December 29, 1979, appellant was driving a motor vehicle in Sioux Falls when his erratic driving behavior attracted the attention of two Sioux Falls policemen. One of the policemen turned on the red lights of the police car to signal appellant to pull over to the side of the road. Instead of stopping, appellant forced a pickup truck off the road, turned off the lights on his car and accelerated away. A chase ensued.

Both the police car and appellant's vehicle reached high rates of speed as the policemen pursued appellant through various side streets. Appellant's vehicle often took up the entire street, fishtailing and striking curbs. Appellant failed to stop for a number of stop signs, and at one point went up over a curb, crossed a residential lawn and went out through some trees before returning to the street. Appellant's vehicle became airborne momentarily after crossing the intersection of 26th Street and Western Avenue.

As the chase progressed, other police units were notified. Two officers in a police car were able to turn onto 18th Street in front of appellant and attempted to stop appellant by not allowing him to pass. As the three vehicles approached the intersection of 18th Street and Minnesota Avenue, however, appellant accelerated and struck the rear of the police car in front of him, forcing the automobile into the intersection. Appellant then proceeded to make a left turn onto Minnesota Avenue.

The two police vehicles once again tried to force appellant to stop, but appellant accelerated and continued north on Minnesota Avenue. The officers then slowed down in view of the increased traffic in the area, but appellant continued to accelerate until he was exceeding sixty miles per hour.[1] Appellant crossed several major intersections and failed to stop for a stoplight

---

1. Appellant testified that as he was proceeding north on Minnesota Avenue he thought his speedometer indicated a speed in excess of 110 miles per hour.

at 11th Street and Minnesota Avenue. As appellant approached the busy intersection of 10th Street and Minnesota Avenue, the light turned green for the 10th Street traffic, whereupon some vehicles started into the intersection. Appellant swerved to avoid one vehicle, but was unable to avoid it completely. Appellant's vehicle then struck the side of a small pickup truck containing two people, both of whom died as a result of injuries sustained in the accident.

Appellant contends that his request for a change of judge was improperly denied. We agree.

Appellant's trial was originally scheduled to be held before the Honorable Richard Braithwaite. Appellant's counsel was informed by letter dated February 20, 1980, that the trial would instead be held before the Honorable Robert J. Patterson on March 3, 1980. Appellant filed an affidavit for change of judge on February 27, 1980. The request for a change of judge was denied by written order dated February 28, 1980. Although this written order indicates that the affidavit was not timely filed, it does not enumerate the exact reasons why the affidavit was not timely.[2]

SDCL 15–12–32 provides that the presiding judge shall assign the case to a different judge if "it is determined that the affidavit is timely and that the right to file the affidavit has not been waived or is not otherwise legally defective . . . ."

SDCL 15–12–27 provides in pertinent part:

> Except as provided in § 16–12A–14 an affidavit for change of circuit judge or magistrate, if against the judge or magistrate who, in the ordinary course, would preside at the hearing or trial, must be filed within the following times:
>
> .  .  .  .  .
>
> (2) If there is no such motion or application:
>
> .  .  .  .  .

(b) In actions triable by a jury in the circuit court at least ten days prior to the date said action is scheduled for trial[.]

SDCL 15–12–28 provides as follows:

> If the affidavit for change is against a judge or magistrate who is to preside who was not regularly scheduled to do so, the provision of § 15–12–27 shall govern if there be sufficient time after the party has knowledge or notice of such change of judge or magistrate, and if there is not sufficient time, the affidavit may be filed promptly after such knowledge or notice, but must be filed prior to the time set for the trial of such action.

SDCL 23A–41–5 adds three days to the time a party has the right or is required to do an act after the service upon him when the service is made by mail.[3] Appellant had the right to file an affidavit for change of judge upon receiving the February 20 letter, and if he desired to file such an affidavit he was required to do so not less than ten days before the day of trial if there remained sufficient time for him to do so. What, then, should be the effect of SDCL 23A–41–5 in such circumstances? In *Duran v. State*, 113 Ariz. 135, 547 P.2d 1049 (1976), it was held that a statute virtually identical to SDCL 23A–41–5 added the prescribed additional time to the ten-day period within which a party is required by Arizona law to file an affidavit for change of judge after a case is first assigned to that judge. Although our rules speak in terms of requiring action within a certain time prior to a fixed event rather than within a certain time after the occurrence of an event, SDCL 15–12–27 requires compliance with that time limitation only if there is sufficient time available for such compliance. The purpose of SDCL 23A–41–5 is, of course, to make available the full time pre-

---

**2.** The State does not contend that the affidavit was not in proper form.

**3.** SDCL 23A–41–5 provides as follows:

> Whenever a party has the right or is required to do an act within a prescribed period

after the service of a notice or other paper upon him and the notice or other paper is served upon him by mail, three days shall be added to the prescribed period.

scribed by statute or rule for taking action when service of a notice that commences the running of the time is made by mail.

■ We hold that SDCL 23A–41–5 had the effect of establishing February 23, 1980, as the date on which appellant received notice of the change of judge. Therefore, there was not sufficient time remaining for appellant to comply with the provisions of SDCL 15–12–27(2)(b) and appellant's affidavit for change of judge should accordingly have been treated as timely filed and a change of judge ordered.

Once a timely affidavit is filed, the judge sought to be disqualified must proceed no further in the action. SDCL 15–12–22. Because appellant had the right to have his case tried before a different judge, we must reverse his conviction and remand the case to the circuit court for new trial. *State v. Henning*, 3 S.D. 492, 54 N.W. 536 (1893); *State v. Ash*, 94 Idaho 542, 493 P.2d 701 (1971); *State v. Sullivan*, 486 S.W.2d 474 (Mo.1972); *Norton v. Reese*, 76 N.M. 602, 417 P.2d 205 (1966).

In view of our holding, we deem it necessary to discuss only two of appellant's remaining contentions.

Appellant contends that first-degree manslaughter was an improper charge in this case and that the proper charge should have been one of second-degree manslaughter.

Appellant was found guilty under SDCL 22–16–15, which provides in pertinent part:

> Homicide is manslaughter in the first degree when perpetrated:

> . . . . .

> (3) Without a design to effect death, but by means of a dangerous weapon[.]

A dangerous weapon is defined as "any firearm, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm[.]" SDCL 22–1–2(9).

The jury was also instructed on second-degree manslaughter, defined by statute as

"[a]ny reckless killing of one human being by the act or procurement of another which . . . is neither murder nor manslaughter in the first degree, nor excusable nor justifiable homicide . . . ." SDCL 22–16–20.

Appellant contends that the applicable statutes must be interpreted as requiring the definition of dangerous weapon to be limited in the case of instrumentalities not inherently dangerous to those situations where the weapon is used with a specific intent to cause harm. We do not agree.

■ Although an automobile is not calculated or designed to inflict death or serious bodily harm, it can be used in a manner that is likely to inflict death or serious bodily harm and, when so used, it constitutes a dangerous weapon within the meaning of SDCL 22–1–2(9).

■ The question, then, is whether, in a motor vehicle homicide, there is any distinction between first-degree manslaughter (SDCL 22-16-15), homicide by means of a dangerous weapon, here an automobile, and second-degree manslaughter (SDCL 22–16–20), the reckless killing of a human being. We conclude that there is a distinction and that the jury was properly allowed to consider the first-degree manslaughter charge.

"[O]ne of the primary rules of statutory and constitutional construction is to give words and phrases their plain meaning and effect. . . ." *Board of Regents v. Carter*, 89 S.D. 40, 46, 228 N.W.2d 621, 625 (1975). The key word in the definition of dangerous weapon is "likely." Within the context of the present case, the word "likely" should be defined as "probably," or "in all probability." See Black's Law Dictionary (5th ed. 1979); Webster's Third New International Dictionary (1976); *Boland v. Vanderbilt*, 140 Conn. 520, 102 A.2d 362, 365 (1953). This Court has, by implication, used "likely" and "in all probability" synonymously. Compare *Stoll v. Wagaman*, 73 S.D. 186, 40 N.W.2d 393 (1949), with *Brewer v. Mattern*, 85 S.D. 356, 182 N.W.2d 327 (1970).

It cannot be said that an automobile being driven in a lawful manner and at a

lawful speed, or even one being driven carelessly, is being used in a manner that will probably result in death or serious bodily harm. Although such a result may be possible, it is not probable. The driving behavior contemplated in SDCL 22–16–15 can be compared to "willful and wanton misconduct," as defined in the guest statute cases. See, e. g., *Brewer v. Mattern*, supra.

"Reckless," as used in the second-degree manslaughter statute, means a "conscious and unjustifiable disregard of a substantial risk that the . . . conduct may cause a certain result or may be of a certain nature. A person is reckless with respect to circumstances when he consciously and unjustifiably disregards a substantial risk that such circumstances may exist[.]" SDCL 22–1–2(1)(d). It does not follow from this definition, however, that the reckless use of an automobile will probably result in death or serious bodily harm. While the reckless use of an automobile may certainly present a possibility of death or serious bodily harm, the first-degree manslaughter statute requires proof that the use of the automobile was of such a nature that death or serious bodily harm was a probable result.

■ The evidence revealed that appellant 1) forced a pickup truck off the road at the start of the chase, 2) traveled down side streets at high speeds, 3) struck a police car prior to the final collision, 4) reached speeds of at least 60, and perhaps 110, miles per hour on Minnesota Avenue, one of the principal thoroughfares in the city, at a time when there was other traffic present on that street, 5) ran a red light shortly before the accident, and 6) had his lights turned off throughout the entire chase. Although any one of these factors alone might not have supported a charge or conviction of first-degree manslaughter, together they are indicative of a manner of use of an automobile that would probably result in

death or serious bodily harm. Accordingly, we hold that the trial court did not err in submitting the first-degree manslaughter counts to the jury.[4]

Appellant contends that the trial court violated the double jeopardy clause of the United States and South Dakota Constitutions in imposing consecutive sentences. In effect, appellant contends that the double jeopardy clause prevents the imposition of multiple punishments where only one statute has been violated by a single act without intent to harm multiple victims. We do not agree.

■ We have adopted the same evidence test for determination of whether there is double jeopardy. *State v. Pickering*, 88 S.D. 548, 225 N.W.2d 98 (S.D.1975); *State v. Teutsch*, 80 S.D. 462, 126 N.W.2d 112 (1964). Under this test, "[t]he same act or transaction may constitute two distinct offenses . . . if each offense as defined by statute requires the proof of some fact or element not required to establish the other." *State v. Teutsch*, supra, 80 S.D. at 468, 126 N.W.2d at 115 (citation omitted). The United States Supreme Court has also adopted a similar test. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). See also *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977).

■ Application of the same evidence test to the facts of the case before us indicates that there was no violation of the prohibition against double jeopardy. Although each conviction was for a violation of the same statute, each count of first-degree manslaughter required proof of an additional fact that the other count did not; i. e., the death of the particular victim named in that count.[5] See *State v. Rabe*, 96 Wis.2d 48, 291 N.W.2d 809, 822 (1980). See also *State v. Fredlund*, 200 Minn. 44, 273 N.W. 353, 356 (1937); *Jeppesen v. State*, 154

4. Because the question is not before us, we make no ruling whether the jury instructions properly differentiated between first- and second-degree manslaughter.

5. SDCL 22–16–2 provides as follows:

No person can be convicted of murder or manslaughter, or of aiding suicide, unless the death of the person alleged to have been killed, and the fact of the killing by the accused are each established as independent facts beyond a reasonable doubt.

Neb. 765, 49 N.W.2d 611, 613–14 (1951). We follow the majority view in holding that where a single act of operating a motor vehicle produces multiple fatalities, there are as many offenses as there are deaths. See *State v. Rabe*, supra, 291 N.W.2d at 822, and the cases cited therein, and *State v. Irvin*, 603 S.W.2d 121 (Tenn.1980). See also 7A Am.Jur.2d *Automobiles and Highway Traffic* § 391 (1980); Annot., 172 A.L.R. 1053, 1062 (1948).

■ Appellant also contends that the principle of lenity requires that the two sentences be concurrent instead of consecutive. The legislature has authorized the imposition of consecutive sentences. SDCL 22–6–6.1. Each count of first-degree manslaughter is an offense within the meaning of SDCL 22–1–2(27). Accordingly, the trial court did not err in imposing consecutive sentences. *State v. Corle*, 294 N.W.2d 799 (S.D.1980); *State v. Teutsch*, supra.

The judgment is reversed, and the case is remanded to the circuit court for new trial. In view of our holding in # 13094, the appeal from the order denying the motion for a new trial (# 13108) is rendered moot and is therefore dismissed.

MORGAN, HENDERSON and FOSHEIM, JJ., concur.

DUNN, J., concurs specially.

DUNN, Justice (concurring specially). ·

I concur in reversing and remanding this case for a new trial.

I would further hope that time has tempered the hysteria surrounding this fatal accident and that sound objective thought by the prosecuting attorney and the trial court will give appellant a fair trial on the facts and under the appropriate South Dakota law.

This incident began by appellant's making of a U-turn in the middle of a street in Sioux Falls at 2 o'clock in the morning, which was seen by police officers who immediately gave chase in an effort to apprehend and arrest appellant for this minor traffic violation. The appellant obviously panicked and tried to outrun the police vehicle. Other police cruisers joined in this chase, which wound through the streets of Sioux Falls for a period of six or seven minutes and at times reached speeds of over 100 miles per hour. This ill-fated procession reached its tragic climax at the intersection of 10th and Minnesota where two Argus Leader employees' small pickup was struck by appellant's auto. The two innocent occupants of the pickup were killed in this collision. Just a short distance to the rear were two police cruisers traveling at the same rate of speed and still in pursuit of this traffic offender. By split-second chance, it was appellant's auto which collided with the decedents' pickup, rather than the police cruisers.

I hold no brief for the appellant in his commission of such traffic offenses, or in his attempt to evade arrest by traveling at such speeds. By the same token, however, I am outraged by the police engaging in this high-speed chase through the streets of Sioux Falls even at this hour of the morning to arrest a man for a minor traffic violation.

As a result, two innocent people died and appellant found himself initially charged with two counts of murder. As far as I know, the officers were not even reprimanded for their irresponsible conduct. Perhaps note should be made of the civil liability rule that "[a] police officer has a right to use whatever means necessary to make an arrest and unless he exceeds *proper* and *rational* bounds or acts in a negligent, careless or wanton manner, he is not liable for damages sustained, even by innocent parties ..." *Wrubel v. State*, 11 Misc.2d 878, 880, 174 N.Y.S.2d 687, 689 (1958) (emphasis added). See *City of Miami v. Horne*, 198 So.2d 10 (Fla.1967); *Reed v. City of Winter Park*, 253 So.2d 475 (Fla. App.1971); SDCL 32–26–15; SDCL 32–31–5.

I realize that in the presence of a violation of the law it is the duty of an officer to take steps to suppress the offense and apprehend the violator; however, this must be done within the limits of rationality. Here

108

the acts of these officers has brought them to the very edge of this precipice of rationality and may even have plunged them over that edge.

The records of the Sioux Falls Police Department will reveal that this is not the first time that such chases have resulted in tragic and sometimes fatal accidents. Lacking any knowledge of a major crime having been committed, these officers were simply over-reacting to a minor traffic offense which could have been handled in a manner which did not endanger innocent people. The officers had a description of the auto and the license number; the arrest could have awaited another day. No great harm would have occurred if the appellant had completely evaded prosecution for this minor offense. Instead, these officers chose to increase the danger by engaging in a high-speed chase of appellant.

The original charge of murder was thrown out by the trial court. Nevertheless, while all of the news reports were fresh in the minds of prospective jurors, the case was brought on for trial within a couple of months before a judge that appellant had properly sought to disqualify. The trial court allowed the case to go forward on the first-degree manslaughter charges. As a result, appellant stands convicted of two counts of first-degree manslaughter and is serving a term of fifty years in the South Dakota Penitentiary. These charges were presented to the jury on the basis that the auto was being used as a dangerous weapon when driven at high speed in downtown Sioux Falls at 2 o'clock in the morning when appellant knew or should have known that such action was *likely to cause serious injury or death.* If this is true, it is even more apparent that trained police officers should have known that this chase was likely to result in serious injury or death. This young defendant's mental state should have been weighed in the light of the contributions of these officers to his irrational and unlawful behavior. When this case is retried in the calm of the courtroom with outside influence at a minimum, I am hopeful that common sense will prevail and this appellant will receive a fair trial in the tradition of American justice.