STATE of South Dakota, Plaintiff
and Appellee,

v.

Daniel G. STETTER, Defendant
and Appellant.

No. 17989.

Supreme Court of South Dakota.

Argued Oct. 5, 1993.

Decided Feb. 16, 1994.

Mark Barnett, Atty. Gen., Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

William A. Delaney, III, Northern Hills Public Defender's Office, Deadwood, for defendant and appellant.

SABERS, Justice.

Defendant Stetter was convicted of manslaughter in the first-degree as a result of a vehicular accident while he was driving under the influence of alcohol. Stetter appeals. We affirm.

## Facts

Sandra Baker, her husband Mike, and their youngest daughter Krista, exited the Pizza Hut parking lot on the evening of November 15, 1991, when a vehicle, driven by Stetter, collided with the Baker vehicle. Krista died as a result of the accident. Sandra was thrown out of the car and suffered a broken tibia, an injury to her face requiring fourteen stitches, abrasions, cuts, and bruises. Mike struck his head and face, bruising his neck and suffering a mild concussion.

The State claims Stetter's vehicle was being operated on the wrong side of the road and without headlights. Two samples of Stetter's blood showed alcohol contents of .195 percent and .160 percent.

The jury found Stetter guilty of manslaughter in the first-degree, two counts of aggravated assault, driving with more than .10 percent by weight of alcohol in blood, driving while his license was revoked, failure to maintain financial responsibility, and open container in a motor vehicle.

Stetter appeals, raising these issues:

1. Whether SDCL 22–7–7 required a mandatory life sentence.

2. Whether the denial of Stetter's motion for a mistrial due to prosecutorial misconduct during closing arguments was error.

3. Whether admission of the analysis of Stetter's blood and urine was error.

4. Whether denial of Stetter's proposed jury instruction was error.

5. Whether denial of Stetter's motions for judgment of acquittal was error.

## 1. Improper Mandatory Life Sentence

Stetter was convicted of manslaughter in the first-degree, a Class 1 Felony. He pled guilty to being a habitual offender, admitting that on July 23, 1980, he was convicted of distribution of marijuana, a Class 6 Felony and on December 2, 1988, he was convicted of driving while under the influence of an alcoholic beverage, third-offense, a Class 6 Felony.[1] The trial court applied SDCL 22–7–7, changing the Class 1 Felony to a Class B Felony and thereby enhancing Stetter's sentence to mandatory life imprisonment.[2] Stetter filed a Motion to Correct an Illegal Sentence. His motion was denied.

■ Stetter argues that the trial court erred in focusing solely on SDCL 22–7–7 and refusing to consider SDCL ch. 22–7 *in pari materia*. He claims that the trial court's application of this enhancement statute penalized him for having only two prior felony convictions. According to Stetter, if he would have had three or more prior felonies, one or more of which was for a crime of violence, his sentence could not have been enhanced under SDCL 22–7–8 beyond the sentence for a Class 1 Felony. This would have permitted a maximum sentence of life imprisonment at the discretion of the trial court. In contrast, SDCL 22–7–7 required enhancement to mandatory life imprisonment for only two prior felonies.

The State argues that Stetter was convicted of two prior felonies, not three, and therefore only SDCL 22–7–7 is relevant and applicable. According to the State, the trial court was required to follow 22–7–7 because its terms are clear and unambiguous. SDCL 22–7–7 provides in part:

---

**1.** Stetter further admitted that on December 2, 1988, he was convicted of driving with .10 percent or more by weight of alcohol in his blood and that on August 10, 1991, he was convicted of driving while under the influence of alcohol.

**2.** SDCL 22–6–1 provides in part:
[F]elonies are divided into the following eight classes which are distinguished from each other by the respective maximum penalties here-

inafter set forth which are authorized upon conviction:
. . . .
   (2) Class B felony: life imprisonment in the state penitentiary. A lesser sentence may not be given for a Class B felony;
   (3) Class 1 felony: life imprisonment in the state penitentiary. In addition, a fine of twenty-five thousand dollars may be imposed[.]

When a defendant has been convicted of one or two prior felonies under the laws of this state or any other state or the United States, in addition to the principal felony, the sentence for the principal felony shall be enhanced by changing the class of the principal felony to the next class which is more severe.

SDCL 22–7–8.1 provides:

If a defendant has been convicted of three or more felonies in addition to the principal felony and none of the prior felony convictions was for a crime of violence as defined in subdivision (9) of § 22–1–2, the sentence for the principal felony shall be enhanced by two levels. A defendant sentenced under this section is eligible for consideration for parole pursuant to § 24–15–5.

And SDCL 22–7–8 provides:

If a defendant has been convicted of three or more felonies in addition to the principal felony and one or more of the prior felony convictions was for a crime of violence as defined in subdivision (9) of § 22–1–2, the sentence for the principal felony shall be enhanced to the sentence for a Class 1 felony.

It is evident that the legislature intended to enact a comprehensive enhancement scheme. It is not evident, however, that the scheme is inconsistent. If a defendant has been convicted of one or two prior felonies, his sentence for the principal felony is enhanced one level. SDCL 22–7–7. If a defendant has been convicted of three or more prior felonies, his sentence for the principal felony is enhanced two levels. SDCL 22–7–8.1. If a defendant, however, has been convicted of three or more prior felonies, one or more of which was for a crime of violence, his sentence for the principal felony is enhanced to the sentence for a Class 1 Felony, *regardless of the classification of the principal felony.* SDCL 22–7–8.

Stetter was convicted of a very serious crime—a Class 1 Felony. By virtue of his two prior felony convictions, it was enhanced

to a Class B Felony, which provides for mandatory life imprisonment. In view of the classification of the principal felony, this appears to be the intention of the legislature under this statutory scheme.

While the statutes may produce results which appear inconsistent under this particular fact situation, Stetter has not shown that the legislative intent was not followed.

[W]hen a statute is clear and unambiguous it is improper for courts to attempt to go behind the express terms of the provision so as to legislate that which the words of the statute do not themselves provide. *See Peterson v. Heitkamp,* 442 N.W.2d 219, 221 (N.D.1989); *Haider v. Montgomery,* 423 N.W.2d 494, 495 (N.D.1988). In other words, the "letter of a clear and unambiguous statute cannot be disregarded under the pretext of pursuing its spirit, because the legislative intent is presumed clear from the face of the statute." *Haider,* 423 N.W.2d at 495. *See also* § 1–02–05, N.D.C.C.

*Schaefer v. North Dakota Workers Comp. Bureau,* 462 N.W.2d 179, 182 (N.D.1990). *See also State v. Fryer,* 496 N.W.2d 54, 55 (S.D.1993) (" 'This Court will not enlarge a statute beyond its face where the statutory terms are clear and unambiguous in meaning.' "). Stetter's actions and convictions come within SDCL 22–7–7 and he has not shown otherwise.[3]

**2. Prosecutorial Misconduct**

█ Stetter argues that comments made by the prosecutor during closing argument constituted a prejudicial community conscience argument to the jury warranting a mistrial. During closing argument, the prosecutor stated:

He had been drinking all day long. He had a blood alcohol concentration of a .20; twice the legal limit. He didn't function and he drove his vehicle on the wrong side of the highway; he was speeding; he didn't have his lights on, and that's an act of depravity. It's inherently dangerous to everyone for him to do that and he killed a

---

**3.** We note, as did the trial court, that under SDCL 22–6–1(3), the trial court was statutorily authorized to sentence Stetter to life imprison-

ment even without the enhancement provision of SDCL 22–7–7.

six year old girl; he shattered the mother's leg in several spots; he caused the father to have a concussion, and that's an act of depravity. *I ask you, ask yourself, how do you protect yourself against this type of activity? How can you protect yourself against somebody driving on a highway with their lights off—*

At this time, Stetter objected and moved for a mistrial on the ground that the prosecutor had made a community conscience argument to the jury. While the trial court acknowledged that the prosecutor was "getting close to the line where you are approaching a community consci[ence] argument," it denied the motion. The trial court admonished the prosecutor "to hold clear of community consci[ence] argument" stating that it would not hesitate to declare a mistrial if the prosecutor "gets into the area that is prohibited by law[.]" The trial court also admonished the jury "to disregard the last few statements of counsel." *See Anderson v. Johnson,* 441 N.W.2d 675, 677 (S.D.1989) ("We do note that upon proper objection by Anderson the trial court admonished the jury to disregard the improvident statements. Under our settled law, we assume the jury accepted the admonition."). No jury instruction was requested or proposed.

Under the settled law of this state, "no hard and fast rules exist which state with certainty when prosecutorial misconduct reaches a level of prejudicial error which demands reversal of the conviction and a new trial; each case must be decided on its own facts. Furthermore, we will not disturb the trial court's ruling on a motion for a new trial based on misconduct of counsel unless we are convinced there has been a clear abuse of discretion." *State v. Kidd,* 286 N.W.2d 120, 121–22 (S.D.1979) (citations omitted).

Community conscience arguments are improper. *People v. Potra,* 191 Mich.App. 503, 479 N.W.2d 707, 712 (1991) ("Civic duty arguments are generally condemned because they inject issues into the trial that are broader than a defendant's guilt or innocence and because they encourage the jurors to suspend their own powers of judgment."). *See generally State v. Blaine,* 427 N.W.2d 113 (S.D.1988) ("Arguments that invite the jurors to put themselves in the shoes of a victim are generally improper.").[4] And while we do not approve of the conduct of the prosecutor,[5] we do not feel compelled to reverse the conviction in view of the strength of the State's evidence against Stetter. "No different result is called for in this case where the evidence presented at trial in support of the prosecution similarly upholds the jury verdict." *Kidd,* 286 N.W.2d at 122. Additionally, "[t]he trial judge was on the scene, had heard the arguments and had the opportunity to note whether they had any apparent effect on the jury. He apparently [did not] feel that they had and we accede to his judgment lacking any showing on the part of the defense of actual bias or prejudice." *State v. Havens,* 264 N.W.2d 918, 923 (S.D. 1978). Stetter has failed to show any actual prejudice or bias or a clear abuse of discretion by the trial court. *Blaine,* 427 N.W.2d at 117–18 (Miller, J., dissenting) (citations omitted).

### 3. Admissibility of Blood and Urine Tests

After arriving at the hospital, Stetter was given the Miranda warnings and the implied consent warning.[6] After learning

---

4. In *Blaine,* we reversed the trial court and ordered a new trial because of prosecutorial misconduct which included inferring that unless the defendant was convicted, either the jurors or a small child would suffer death or serious injury. *Blaine,* 427 N.W.2d at 116.

5. We reiterate our discussion in *Blaine* of the duty and obligation of a prosecutor.

> The prosecutor has an overriding obligation, which is shared with the court, to see that the defendant receives a fair trial. The burden of ensuring that the defendant receives a fair trial weighs as heavily upon the prosecutor as it does on defense counsel, the court, and the jury.
> The prosecutor must refrain from injecting unfounded or prejudicial innuendo into the proceedings, and not appeal to the prejudices of the jury.

427 N.W.2d at 115 (citations omitted).

6. "Under SDCL 32–23–10, the predicates for admission of the results of a forced blood test are simple. 'Once an individual has been convicted twice for a violation of SDCL 32–23–1 (DUI), a trooper is only required to inform an arrested person of the warnings outlined in SDCL 32–23–10, and the result of a compulsory blood alcohol

that this would be Stetter's third DUI, the officer informed Stetter that he was required to give a blood sample. Stetter complied. Later, Stetter was asked to give another blood sample, as well as a urine sample. He complied. At the motions hearing, Stetter moved to suppress the results of the blood and urine tests. His motions were denied under the authority of *State v. Heinrich,* 449 N.W.2d 25 (S.D.1989). Stetter argues that the trial court erred in denying his motion to suppress the results of the tests.

■ "In making evidentiary rulings, the trial court has broad discretion. [Defendant] must show an abuse of discretion to reverse the trial court's ruling." *Jacobson,* 491 N.W.2d at 458 (citation omitted). The trial court's findings in connection with a motion to suppress are reviewed under the clearly erroneous standard. *State v. Corder,* 460 N.W.2d 733, 736 (S.D.1990) (citation omitted).

SDCL 32–23–10 provides in part:

Any person who operates any vehicle in this state is considered to have given his consent to the withdrawal of blood or other bodily substance and chemical analysis of his blood, breath or other bodily substance to determine the amount of alcohol in his blood and to determine the presence of marijuana or any controlled drug or substance.

The person shall be requested by the officer to submit to the withdrawal of blood or other bodily substance for chemical analysis or chemical analysis of his breath and shall be advised by the officer that:

(1) If he refuses to submit to the withdrawal or chemical analysis, no withdrawal or chemical analysis may be required unless he has been arrested for a third, fourth or subsequent violation of § 32–23–1, constituting a felony offense under § 32–23–4 or 32–23–4.6[.]

"We have recognized that SDCL 32–23–10 eliminates the right of a third offense DUI suspect to refuse a blood test, under the implied consent law." *Jacobson,* 491 N.W.2d at 458 (citation omitted).

Under *Heinrich* and *Jacobson,* to enforce the implied consent law in SDCL 32–23–10, a law enforcement officer must make a preliminary determination as to whether an individual is entitled to the statutory grant of the right to refuse to submit to a blood or urine test. *Id.* at 459. "An officer can only do that by taking steps prior to administration of a forced blood test to confirm whether an individual has a history of DUI convictions sufficient for forfeiture of his statutory right of refusal." *Id.*

Although a review of the motions hearing indicates conflicting testimony as to whether the officer knew that Stetter had two prior DUI convictions as opposed to two prior DUI arrests, the trial court entered a finding of fact that "[s]hortly after the arrest it was determined that i[t] was the Defendant's third offense DWI in the past five years." *See Jacobson,* 491 N.W.2d at 459 (remanding to the trial court for a determination of the factual question of whether the arresting officer had information prior to administration of Defendant's blood test that the arrest was his third DUI offense). Stetter has failed to demonstrate that this finding is clearly erroneous. Therefore, under the implied consent law, Stetter had no right to refuse the blood or urine tests and they were admissible.

### 4. Denial of Jury Instruction

■ Stetter argues that the trial court erred in rejecting his proposed jury instruction. Stetter claims that, by refusing his jury instruction, the trial court failed to instruct the jury on the proper standard of conduct for a defendant to be found guilty of manslaughter in the first-degree and therefore, his motion for a new trial should have been granted.

Stetter, relying upon *State v. Seidschlaw,* 304 N.W.2d 102 (S.D.1981), argues that manslaughter in the first-degree "requires proof that the use of the automobile was of such a nature that death or serious bodily harm was a probable result." *Id.* at 106. According to Stetter, while his proposed jury instruction defined the correct standard of conduct un-

test is admissible.'" *State v. Jacobson,* 491 N.W.2d 455, 458 (S.D.1992) (quoting *State v.*

*Heinrich,* 449 N.W.2d 25, 27 (S.D.1989)).

der *Seidschlaw,* the trial judge merely instructed the jury as to the elements, refusing to instruct the jury on *any* proper standard of conduct.

Stetter's proposed jury instruction provided:

> In order to convict defendant of Manslaughter in the 1st degree, you must find beyond a reasonable doubt that the defendant's conduct consisted of driving behavior manifesting willful and wanton misconduct.

■ Jury instructions are adequate, if, when considered as a whole, they correctly state the law and inform the jury. *State v. Gillespie,* 445 N.W.2d 661, 664 (S.D.1989) (citations omitted).

Jury Instruction No. 14 provided:

> The elements of the offense of manslaughter in the first degree as charged in Count I–B of the Indictment, each of which the state must prove beyond a reasonable doubt, are:
>
> 1. That the defendant at the time and place alleged in the indictment, caused the death of Krista Baker.
> 2. That the killing by the defendant was by means of a dangerous weapon.
> 3. That the defendant did so without design to effect the death of Krista Baker.

Jury Instruction No. 15 provided:

> The words "dangerous weapon" as used in these instructions mean: any firearm, knife or device, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, *or by the manner in which it is used death or serious bodily harm is a probable result.* (Emphasis added).

While *Seidschlaw* does state that "[t]he driving behavior contemplated in SDCL 22–16–15 *can be compared to* 'wilful and wanton misconduct,' as defined in the guest statute cases," 304 N.W.2d at 106 (citation omitted) (emphasis added), this language is dicta. As Stetter himself noted in his brief, *Seidschlaw* stands for the proposition that "the first-degree manslaughter statute requires proof that the *use of the automobile was of such a nature that death or serious bodily harm was a probable result.*" *Id.* (emphasis added). What Stetter failed to note was that Jury Instruction No. 15 accurately instructed the jury on the *Seidschlaw* standard of conduct that he argues for in his brief. The fact that the standard of care was included in the definition of "dangerous weapon" is not shown to be error. Stetter has failed to demonstrate that the jury instructions, *as a whole,* failed to correctly state the law and inform the jury. *Gillespie,* 445 N.W.2d at 664.

## 5. Motions for Judgment of Acquittal

■ Stetter moved for Judgment of Acquittal on all counts of the Indictment throughout the trial. The motions were denied. Stetter argues that the trial court erred in denying his motions because there was insufficient evidence to support his convictions for manslaughter in the first-degree and aggravated assault.

■ Our standard of review of a denial of a motion for judgment of acquittal is whether the State made out a prima facie case from which the jury could reasonably find the defendant guilty. *State v. Blakey,* 332 N.W.2d 729, 731 (S.D.1983). "[T]his Court will not resolve conflicts in the evidence, pass on the credibility of the witnesses, or weigh the evidence. These functions lie solely within the province of the jury as ultimate trier of fact. It has long been established by this Court that a jury verdict shall only be set aside where the evidence and the reasonable inferences to be drawn from the evidence do not sustain a rational theory of guilt." *State v. Burtzlaff,* 493 N.W.2d 1, 4–5 (S.D.1992) (citations omitted). *See also Blakey,* 332 N.W.2d at 731. We have reviewed the evidence and conclude that Stetter has failed to demonstrate that the evidence does not sustain a rational theory of guilt.

Affirmed.

HENDERSON, J., concurs with a writing.

MILLER, C.J., concurs specially.

WUEST and AMUNDSON, JJ., dissent.

HENDERSON, Justice (concurring).

Stetter was not simply under the influence of alcohol when he killed this little girl.

Lest, for posterity, the facts become obscure through time or sanitized as the analytical mind applies lawyers' logic to the facts at hand, for the sake of Krista Baker, an innocent six-year-old girl, these facts should be noted: *

● This collision was eyewitnessed and the cries of anguish of the mother for her deceased child rang out into the night, the jury heard testimony such as "Where's my baby?"

● A Belle Fourche police officer arrived at the scene approximately two minutes after the collision.

● Stetter was not just under the influence of an intoxicating beverage, he was dead drunk with a 1.95% of alcohol in his blood at 8:25 p.m. and a 1.60% of alcohol at 9:40 p.m.

● Stetter consented to a urine sample, to check for drugs, and he had a small amount of marijuana—THC metabolid—in his system.

● Found in Stetter's car, was an open bottle of peppermint schnapps and beer cans. A witness, Holly Kester, testified that Stetter was drinking peppermint schnapps when he ate dinner with her. Very shortly after he left her to go find his girlfriend (approximately fifteen minutes), Kester saw the rescue vehicles on the highway near the accident scene.

● Stetter admitted, at the hospital, that he had consumed alcoholic beverages, including "roughly a pint of whiskey." Five witnesses testified that Stetter began drinking intoxicants early in the afternoon and was seen in two saloons during the late afternoon hours.

● Shortly before the collision, at approximately 7:00 p.m., Stetter was warned by his girlfriend not to drive because he was intoxicated; she tried to keep the keys from Stetter and tried to prohibit him from driving, but he ignored her admonitions.

● Concerning the above blood tests, Stetter consented, actually consented by words and action, to the taking of his blood. The record establishes that this case established his sixth DWI arrest since 1985. One case was dismissed pursuant to a plea bargain. However, the point is, he was a habitual drunk driver and he killed this little girl.

● Stetter has advanced no argument that his habitual criminal convictions are invalid.

● When Krista was taken to the Belle Fourche hospital, she was examined by Dr. Gregg Hewitt, who determined that she had no vital signs and that her "skull was exposed, and it appeared that it was broken out and pushed to the back, up into her brain." Trial transcript at 362. The mother's right leg, bone and all, was shattered into multiple pieces and she had 14 facial stitches. It was so severe that Dr. Hewitt testified that her injuries could have been life threatening. Ultimately, a rod was placed in her leg and she has a serious permanent injury.

● Father's neck had an alarming development from the trauma because of the great swelling which could precipitate a "respiratory compromise, from pressure on the trachea" per the examining physician. There was also a big mass of swelling on the father's jaw and he had internal bleeding and a cracked rib.

● Due to his previous drunken driving convictions, Stetter was driving while his license was revoked and without insurance.

Not the prosecutor, not the Attorney General's office, not the doctors, not the law enforcement officers, not the witnesses who testified, and not the trial judge, caused Stetter to be convicted of first degree manslaughter with two counts of aggravated assault. Stetter claims his fate is ill-deserved, but Stetter chose his own fate. He was convicted of manslaughter in the first degree because of his own transgression.

---

* This is the type of case which spawns appeals and habeas corpus actions for years to come. Historians can (sometimes) alter the past. Therefore, the facts of this case should be recorded.

This case was moved to Pennington County—due to the outrage in Butte County, situs of the tragedy. Why? Because the South Dakota Judicial System, through the trial court's ruling, wanted to ensure a fair trial. An experienced, able, and knowledgeable trial judge presided in this case. Stetter had a fair trial. Truly, the weight of truth abounded and I join the opinion of Justice Sabers. Justice has been served.

I have carefully reviewed Jury Instructions numbered 14, 15, 17, and 18. These instructions do not embody the specifics of "willful and wanton misconduct" upon which Stetter bases his appeal. He requested an instruction, 1 C, and advocates that the trial court committed reversible error in not advising the jury of his viewpoint of the law. *State v. Seidschlaw*, 304 N.W.2d 102 (S.D. 1981), as Justice Wuest has pointed out, be it dicta or otherwise, did mention "willful and wanton misconduct" as a standard of driving behavior contemplated in SDCL 22–16–15. It should be pointed out that the old "guest statutes," namely SDCL §§ 32–34–1 and 32–34–2 were repealed by the State Legislature in 1978. It appears to this author that "willful and wanton misconduct" is not a standard to apply in a first-degree manslaughter case in this state.

In Jury Instruction 14, as given by the trial court, the jury was instructed to consider the elements set forth in SDCL 22–16–15(3) and therein advised the jury that "the State must prove that the killing by the Defendant was by means of a dangerous weapon." Then, the trial court, by Jury Instruction 15, instructed the jury as to what a dangerous weapon could be and that included this phrase ". . . or by the manner in which it is used death or serious bodily harm is a probable result." It is clear, per Instruction 15, that the jury could not convict Stetter unless it were to find his automobile to be a dangerous weapon, used in a manner where death or serious injury is a probable result. Furthermore, the trial court advised the jury under Instruction 17, that manslaughter in the second degree must be "reckless" and "neither murder nor manslaughter in the first degree." Obviously, the jury believed that Stetter's driving was more than reckless. Finally, the trial court instructed by way of Instruction 18, that the term "reckless" was "a conscious and unjustifiable disregard of a substantial risk."

When read together, and as a whole, manslaughter in the first degree was required to be an act by way of spawning a "probable result" with a lethal instrument and beyond "recklessness" or "a conscious and unjustifiable disregard of a substantial risk." In layman's jargon, first degree manslaughter requires proof that the use of an automobile is of such a nature that death or serious harm was a "probable result." Stetter was blind drunk, driving on a heavily traveled highway, over the speed limit and refused to turn over his keys to the automobile he owned. A potential collision is obvious from this type of driving conduct. Due to Stetter's previous convictions for driving while intoxicated, he had grounds to be aware of the risk when he went out on the road in his condition. This rivets on the "probable result." *See United States v. Fleming*, 739 F.2d 945, 949 (4th Cir.1984). Stetter's past driving record and conduct does not suggest any innocence on his part. His acts on November 15, 1991, were the creation of a death scenario because there was a probable result of his killing or seriously injuring travelers on the highway.

Stetter must establish that if a different instruction or instructions had been given, the "jury might and probably would have" returned a different verdict. *State v. Willis*, 370 N.W.2d 193, 200 (S.D.1985). Here, facts were presented to the jury proving Stetter's calloused indifference to the danger he posed to the public. Laws, now on the books, were enacted by our State Legislature for the very purpose of addressing the egregious record and driving conduct of Stetter. This jury heard these facts of woe and death. Its conclusion: Guilty of First Degree Manslaughter and other felonies. Had the trial court instructed differently, the jury would not have returned a different verdict, in my opinion. *Id.*

MILLER, Chief Justice (concurring specially).

I write specially to question the majority's assertion that *Blaine* stands for the proposi-

tion that "[c]ommunity conscience arguments are clearly improper." In *State v. Blaine,* 427 N.W.2d 113 (S.D.1988), the state's attorney made arguments to the jury that were not based on the evidence. Blaine was stopped by a police officer who observed his vehicle weaving back and forth down the road. In cross-examination and closing argument, the prosecutor hypothesized about what would have happened had a small child run into Blaine's path and asked the jury to put themselves in the shoes of a possible victim. Three members of this court found those arguments warranted reversal for prosecutorial misconduct.

In this case, the prosecutor was making an argument based upon evidence presented to the jury—Stetter's drinking, blood alcohol content, speeding, driving on the wrong side of the road without lights and the consequences of the accident itself—not a community conscience argument. *See United States v. Johnson,* 968 F.2d 768, 771 (8th Cir.1992); *United States v. Lee,* 743 F.2d 1240, 1253 (8th Cir.1984) (stating a community conscience argument is "an emotional appeal calculated to persuade the jury to decide the case *on other than the facts before it* ") (emphasis added).

Further, in my opinion, all community conscience arguments are not prohibited. "Unless calculated to inflame, an appeal to the jury to act as the conscience of the community is not impermissible[.]" *United States v. Lewis,* 547 F.2d 1030, 1037 (8th Cir.1976), *cert. denied,* 429 U.S. 1111, 97 S.Ct. 1149, 51 L.Ed.2d 566 (1977); *Johnson,* 968 F.2d at 770; *United States v. Brown,* 887 F.2d 537, 542 (5th Cir.1989).

WUEST, Justice (dissenting).

I respectfully dissent because it is my opinion that the trial court erred in rejecting Stetter's proposed jury instruction on the standard of conduct necessary for a guilty verdict on a charge of manslaughter in the first degree. Thus, his motion for a new trial should have been granted.

Stetter was charged with a violation of SDCL 22–16–15(3), which statute provides: "Homicide is manslaughter in the first degree when perpetrated: (3) Without a design

to effect death, but by means of a dangerous weapon."

We have previously noted the distinction between first-degree manslaughter and second-degree manslaughter. *State v. Seidschlaw,* 304 N.W.2d 102, 105 (S.D.1981). Further, we stated:

Although an automobile is not calculated or designed to inflict death or serious bodily harm, it can be used in a manner that is likely to inflict death or serious bodily harm and, when so used, it constitutes a dangerous weapon within the meaning of SDCL 22–1–2(9).... It cannot be said that an automobile ... even one being driven carelessly, is being used in a manner that will *probably* result in death or serious bodily harm. Although such a result may be *possible,* it is not *probable.* The driving behavior contemplated in SDCL 22–16–15 can be compared to "willful and wanton misconduct," as defined in the guest statute cases.... [T]he first-degree manslaughter statute requires proof that the use of the automobile was of such a nature that death or serious bodily harm was a *probable* result.

304 N.W.2d at 105–06 (emphasis added) (citing *Brewer v. Mattern,* 85 S.D. 356, 182 N.W.2d 327 (S.D.1970)). The majority opinion discounts this writing as mere "dicta." I disagree. *Seidschlaw* clarified the nature of the conduct that must be proved by the State to sustain a conviction of first-degree manslaughter, and the jury in the present case should have been so informed. The giving of an instruction that simply tracks the wording of a statute is not necessarily sufficient; where pertinent, applicable decisional law should be incorporated into the instruction so that the law is correctly stated and the jury is fully informed. *State v. Oster,* 495 N.W.2d 305, 312 (S.D.1993) (holding that where crucial wording is missing from a jury instruction, the trial court failed to accurately inform the jury of the law).

Other opinions of this court have discussed the standard of conduct for a manslaughter conviction. For example, considering the nature of the "reckless" conduct that must be proved to sustain a second-degree manslaughter conviction, we stated that "Opera-

tion of a motor vehicle in violation of the law, without more, is not sufficient to constitute reckless conduct, even if there is a fatality as a result thereof." *State v. Wall,* 481 N.W.2d 259, 263 (S.D.1992) (citing *State v. Olsen,* 462 N.W.2d 474, 477 (S.D.1990)). In *Olsen,* we noted that, " '[N]ot every violation of law or unlawful act in the operation of a motor vehicle will render the operator criminally responsible for deaths which may result. Such an operator ... must evidence a disregard of human life or an indifference to the consequences of his acts.' " *Olsen,* 462 N.W.2d at 477 (quoting *Commonwealth v. Kaulback,* 256 Pa.Super. 13, 389 A.2d 152, 154–55 (1978)). Clearly, these cases show that there is some standard of conduct that must be proved by the state to sustain a conviction for manslaughter in the degree charged, a standard on which a jury must be instructed.

The record in the present case shows that the jury *was* instructed on standards of conduct for the other homicide charges—murder in the second degree,[1] second-degree manslaughter,[2] and vehicular homicide. The jury ought also to have been instructed on a standard of conduct for first-degree manslaughter.

The majority opinion excuses the trial court's failure to instruct on a standard of conduct for first-degree manslaughter by looking to Jury Instruction No. 15, which defined the phrase "dangerous weapon." It is not plausible to expect a jury to look to a "dangerous weapon" instruction in the hopes of finding a standard of conduct for the crime charged imbedded within said instruction. The purpose of the "dangerous weapon" instruction is to define that term—not to de-

scribe a standard of conduct for first-degree manslaughter.

In sum, the determination of whether Stetter was guilty of first-degree manslaughter was made without adequate instructions to the jury. I would reverse the circuit court's denial of a motion for new trial.

AMUNDSON, Justice (dissenting).

This young man who faced a life sentence without parole is certainly entitled to a fair trial. The prosecutor's claim that the jury needed to protect themselves from Stetter had no relevance to the issues in this case; nor is it a fair comment on the evidence.

This type of argument evinces a "win at all costs" mentality because, if not proper, it still will pass muster as harmless error. As the majority states, the State's evidence against Stetter was strong, if not overwhelming. Ergo: Why even make such an argument? This type of conduct is contrary to the precedent handed down by this court in *State v. Blaine,* 427 N.W.2d 113, 115–16 (S.D.1988), where we held:

> The duty and obligation of the prosecutor is perhaps best set forth in *Viereck v. United States,* 318 U.S. 236, 248, 63 S.Ct. 561, 566–67, 87 L.Ed. 734, 741 (1943), quoting *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935):
>
> > The United States Attorney is representative not of ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in all criminal prosecutions is not that it shall win a case, but that justice shall be done.

---

1. For example, in conjunction with instructions on second-degree murder, the jury was told in part that:

    The phrase "evincing a depraved mind, regardless of human life" as used in these instructions means a person having an inherent deficiency of moral sense and rectitude; more than a high degree of negligence or recklessness must exist, and the mind must not only disregard the safety of another but be devoid of regard for the life of another.

    Whether the conduct is imminently dangerous to others and evincing a depraved mind regardless of human life is to be determined from the conduct itself and the circumstances of its commission.

    Jury Instructions No. 11 and 12.

2. In regard to second-degree manslaughter, the jury was instructed that:

    The words 'reckless' or 'recklessly' or any derivative thereof as used in these instructions means a conscious and unjustifiable disregard of a substantial risk that one's conduct may cause a certain result or may be of a certain nature.

    A person is reckless with respect to circumstances when he consciously and unjustifiable disregards a substantial risk that such circumstances may exist.

    Jury Instruction No. 18.

As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor— indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

This is a foul which should not be overlooked in this life without parole case.

The trial court's admonishment to the jury was too little too late in my opinion. Once the cattle are milling along the road, it is too late to close the gate. Further, it is a legal fiction to think that lay jurors can wash from their minds this seed which has been planted.

No matter how reprehensible the conduct of a defendant may be, each person is entitled to a fair but not necessarily a perfect trial. *State v. Bennis,* 457 N.W.2d 843 (S.D. 1990). Although Stetter's conduct is totally unacceptable in our society, I am convinced that, due to the prosecutor's overreaching final argument, Stetter was prohibited from receiving a fair trial.

Finally, I concur in the dissent filed by Justice Wuest on Issue 4.