STATE of South Dakota, Plaintiff
and Appellee,

v.

Hugo BARRIENTOS, III, Defendant
and Appellant.

No. 16233.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 1989.

Decided Aug. 2, 1989.

Diane M. Patrick, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Lawrence R. Bihlmeyer, Rapid City, for defendant and appellant.

PER CURIAM.

## ACTION

Hugo Barrientos, III (Barrientos), appeals his conviction for aggravated assault. We affirm.

## FACTS

Barrientos was formerly employed by a Hardees franchise in Rapid City, South Dakota. Prior to the events in question he was barred from Hardees' property because of his behavior. At 1:00 a.m. on October 25, 1987, Barrientos parked his car, a Chevelle modified for racing, in Hardees' parking lot. Barrientos waited in the car while two of his friends went inside the restaurant to place an order.

While Barrientos waited for his friends two private security guards employed by Hardees, Donald Harden (Harden) and James Griffith (Griffith) approached his car to place him under arrest for trespassing. Harden asked Barrientos to step out of his car. When Barrientos refused, Griffith opened the driver's door and Harden began to walk back into Hardees to call for police backup.

Barrientos shut the car door, locked it, started the engine and turned on the headlights. When Harden heard the engine start he turned around and approached the front of the car. As the car moved forward to leave its parking space it "nudged" Harden, knocking him slightly off balance.

Harden took a step or two backward, maintaining eye contact with Barrientos. Barrientos motioned to Harden to move out of the way, turned the steering wheel to the right and accelerated so rapidly that the tires squealed. Although Harden attempted to leap out of the way, his right leg was struck by the left fender of the fishtailing racing car. Although he was not bruised, Harden experienced some soreness in the leg.

Barrientos was subsequently charged with one count of aggravated assault in violation of SDCL 22–18–1.1(2) and was found guilty after a court trial.

## ISSUE 1

Is aggravated assault under SDCL 22–18–1.1(2) a "specific intent" crime?

Barrientos was charged with aggravated assault under SDCL 22–18–1.1(2) which provides in pertinent part:

Any person who:

*   *   *   *   *   *

(2) Attempts to cause, or knowingly causes, bodily injury to another with a dangerous weapon;

*   *   *   *   *   *

is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

The trial court found that Barrientos did not intend to cause bodily injury to Harden when he struck Harden with his automobile. Therefore, the trial court concluded that it could not convict Barrientos of aggravated assault based upon an "attempt" to cause bodily injury.[1] The trial court did find, however, that there was sufficient evidence from which to conclude that Barrientos "knowingly" caused bodily injury to

Harden.[2] Accordingly, the trial court found him guilty of aggravated assault.

■ As his first argument, Barrientos contends that aggravated assault by "knowingly" causing bodily injury to another (SDCL 22–18–1.1(2)) is a "specific intent" crime requiring proof of specific intent to cause bodily injury in order to sustain a conviction for the offense. Since the trial court found that he did not intend to cause bodily injury to Harden, Barrientos asserts that the trial court erred as a matter in law in finding him guilty of aggravated assault. We disagree.

Generally, to convict one of "intentionally" committing a criminal offense requires proof that the crime was committed with a specific design to cause a certain result. SDCL 22–1–2(1)(b). *See also State v. Blakey*, 399 N.W.2d 317 (S.D.1987) (intent imports a specific design to cause a certain result or a specific design to engage in conduct of that nature). However, aggravated assault as charged in this case is defined as "knowingly" causing bodily injury to another. SDCL 22–18–1.1(2). The word intent does not appear in the statute. To convict one of "knowingly" committing a criminal offense State need not prove that the defendant was certain that the prohibited result would occur. SDCL 22–1–2(1)(c); *see also Blakey, supra*. All that is necessary is proof that the defendant was cognizant of certain facts which should have caused him to believe that the prohibited result would occur. SDCL 22–1–2(1)(c); *see also Blakey, supra*, (defendant guilty of "knowingly" trafficking in stolen vehicles or parts where he was cognizant of certain facts which should have caused him to believe that his vehicles or parts were stolen or obscured).

1. We do not reach the propriety of this ruling in this opinion.

2. The trial court's oral findings in this regard state:

The issue is, did Mr. Barrientos knowingly cause bodily injury. He saw before him a man who intended to keep him there if he could, a man, along with his companion, was going to arrest him if he could and he made it clear that he was going to be arrested. Mr. Harden was still standing squarely in front of

the vehicle, slightly to one side and it was clear that Mr. Harden was not going to move, even though Mr. Barrientos continued to edge forward and Mr. Barrientos hit the gas. I don't think he intended to do him any great bodily harm or injury. He intended to leave the parking lot, but he knowingly caused the injury because the officer was standing there in front of him, clearly able to see him and he proceeded, nonetheless, to accelerate the car.

■ It follows from the above that to convict Barrientos it was not necessary for State to prove that he acted with a specific design to cause bodily injury to Harden. All State had to prove was that Barrientos was cognizant of certain facts which should have caused him to believe that his act would cause bodily injury to Harden. Therefore, we do not find intent to cause bodily injury to be an element of aggravated assault by "knowingly" causing bodily injury to another. (SDCL 22–18–1.1(2)).

■ Moreover, we cannot agree that aggravated assault by "knowingly" causing bodily injury to another (SDCL 22–18–1.1(2) is a "specific intent" crime.

> "Specific intent has been defined as 'meaning some intent in addition to the intent to do the physical act which the crime requires,' while general intent 'means an intent to do the physical act—or, perhaps, recklessly doing the physical act—which the crime requires.'"

*State v. Rash,* 294 N.W.2d 416, 417 (S.D. 1980) (*quoting People v. Lerma,* 66 Mich. App. 566, 567, 239 N.W.2d 424, 425 (1976)).

We most recently addressed the specific/general intent dichotomy in *State v. Balint,* 426 N.W.2d 316 (S.D.1988) wherein we held that intentional damage to property is a general intent crime. In reaching this conclusion we noted:

> Specific intent with regard to mental state means what is the "particular" intent, i.e., is the crime restricted to those who act purposely or does it include those who act only recklessly, etc.? The phrase "specific intent" has an entirely different connotation when used with reference to such doctrines as "diminished capacity" and "voluntary intoxication." "Some crimes require a specified intention in addition to the intentional doing of the *actus reus* itself,—an intent specifically required for guilt of the particular offense...." Perkins, [*Criminal Law,* at 762 (2d ed. 1969).] LaFave & Scott, *Handbook on Criminal Law* § 28, at 202 (1972), states this is the most common usage of "specific intent." The term "designate[s] a special mental element which is required above and beyond any mental state required with respect to the *actus reus* of the crime." LaFave & Scott, *supra.* Crimes such as larceny and burglary provide good examples....

> \*     \*     \*     \*     \*     \*

> *Use of the term "intentionally"* with regard to the crimes of eluding a police vehicle and resisting arrest *merely designates that culpability requires something more than negligence or recklessness.* However, *mere use of that term does not designate an additional mental state beyond that accompanying the act. Therefore, these are not "specific intent" crimes.* There was no error in failing to instruct with regard to specific intent.

*Balint,* 426 N.W.2d at 318 (emphasis original) (*quoting State v. Huber,* 356 N.W.2d 468, 472–73 (S.D.1984)). *See also State v. Big Head,* 363 N.W.2d 556 (S.D.1985); *Rash, supra.*

Just as in *Balint,* we find the language emphasized above decisive. We cannot read the words "knowingly causes, bodily injury to another....," (SDCL 22–18–1.1(2)) as requiring more than a general intent. There is no additional mental state required beyond the "knowledge" which must accompany the act causing bodily injury. Therefore, we hold that aggravated assault by knowingly causing bodily injury to another with a dangerous weapon (SDCL 22–18–1.1(2)) is a general intent crime. *Balint, supra.*

### ISSUE 2

■ Was Barrientos' car a dangerous weapon?

Barrientos also raises error in his conviction based upon the element of use of a "dangerous weapon" in SDCL 22–18–1.1(2) (aggravated assault). He argues that since he did not "aim" his car at Harden he did not use the car as a "dangerous weapon." Accordingly, Barrientos asserts that the element of causing bodily injury with a "dangerous weapon" is absent in this case and

that it was error to convict him of aggravated assault under SDCL 22–18–1.1(2).

A "dangerous weapon" is defined as:

[A]ny firearm, knife or device, instrument, material or substance, whether animate or inanimate, which is calculated or designed to inflict death or serious bodily harm, or by the manner in which it is used is likely to inflict death or serious bodily harm[.]

SDCL 22–1–2(10). "Although an automobile is not calculated or designed to inflict death or serious bodily harm, it can be used in a manner that is likely to inflict death or serious bodily harm and, when so used, it constitutes a dangerous weapon within the meaning of SDCL 22–1–2[ (10) ]." *State v. Seidschlaw*, 304 N.W.2d 102, 105 (S.D. 1981).

In this instance, we note that Barrientos was not driving an average automobile but a Chevelle which had been specially modified for racing purposes. Further, the only reason Harden was not more seriously injured when the fishtailing car sped out of its parking spot was because he was able to leap out of its way. Moreover, the trial court specifically found that the manner in which Barrientos used his car was not only "likely" to inflict bodily harm but that Barrientos "knew" it would injure Harden. It follows that Barrientos did use the car as a "dangerous weapon." Therefore, there was no error by the trial court in convicting Barrientos of aggravated assault under SDCL 22–18–1.1(2).

Affirmed.