STATE of South Dakota, Plaintiff
and Appellee,

v.

Carl J. KOESTER, Defendant
and Appellant.

No. 18347.

Supreme Court of South Dakota.

Considered on Briefs on Feb. 16, 1994.

Decided July 13, 1994.

Mark Barnett, Atty. Gen., Gary Campbell, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Phillip O. Peterson of Frieberg, Rudolph & Peterson, Beresford, for defendant and appellant.

PER CURIAM.

Carl J. Koester (Koester) appeals a suspended imposition of sentence for aiding and abetting an aggravated assault. We affirm.

FACTS

On September 11, 1992, the high school from Dell Rapids, South Dakota defeated the high school from Elk Point, South Dakota in a football game that, apparently, left bitter

feelings between the students and fans of the two schools. On September 15, 1992, three Dell Rapids students traveled to Elk Point to watch a basketball game between the two schools. On leaving the Elk Point gymnasium, the three Dell Rapids students were subjected to some verbal harassment from a car load of Elk Point students and some other students standing across the street from the gymnasium. The three Dell Rapids students got into their car and proceeded from the gymnasium toward the nearby interstate highway. While enroute, the Dell Rapids students were followed by a number of motor vehicles presumably containing disgruntled Elk Point students and football fans.

As the Dell Rapids vehicle approached the on-ramp to the interstate, the occupants observed an Elk Point vehicle [1] partially blocking the ramp. The driver of the vehicle was standing beside his car holding a baseball bat. The Dell Rapids vehicle was able to maneuver around the Elk Point vehicle, but, during that process, the driver of the Elk Point vehicle struck the back end of the Dell Rapids vehicle with his baseball bat. Fearing for their safety, the Dell Rapids students did not stop, but, proceeded from the on-ramp onto the interstate, heading north from Elk Point to Dell Rapids.

Shortly after getting on the interstate, the Dell Rapids students found their car "boxed in" by a group of six Elk Point vehicles with additional vehicles pursuing them from the rear. The vehicles in front of the Dell Rapids car blocked it in and kept it from passing. They also kept the speed of the caravan reduced to between fifteen and twenty miles per hour. During this course of events, the vehicles forming the blockade were switching positions and lanes. Some of the individuals in the blockade were waving bats through their car windows at the Dell Rapids car and shouting obscenities at its occupants. Most alarming of all, the vehicle directly behind the Dell Rapids car rammed it approximately fifteen to twenty times. This harassment continued all the way from Elk Point to an exit near Vermillion, South Dakota where the Elk Point vehicles left the interstate and allowed the Dell Rapids vehicle to proceed on its way.

During the above events, the students in the Dell Rapids vehicle managed to write down the license plate numbers of six of the Elk Point vehicles that were keeping them boxed in on the interstate. These numbers were subsequently turned over to the authorities pursuant to the investigation of this incident. One of the six license plate numbers was for a pickup truck owned by Koester's father that was driven by Koester on the night of the incident.

On January 5, 1993, state filed an information charging Koester with one count of aiding and abetting the commission of an aggravated assault in violation of SDCL 22–3–3 and SDCL 22–18–1.1(5).[2] Koester's jury trial was conducted on March 12, 1993 and the jury returned a guilty verdict. A suspended imposition of sentence was entered accordingly and this appeal followed.

## ISSUE 1

## DID THE TRIAL COURT ERR IN DENYING KOESTER'S MOTION FOR A JUDGMENT OF ACQUITTAL?

Koester moved for a judgment of acquittal at the close of state's case and, again, at the close of all the evidence. Both motions were denied. After trial, Koester filed another motion for a judgment of acquittal or, in the

---

1. The phrase "Elk Point vehicles" is used generically to identify those vehicles that interfered with the free travel of the group from Dell Rapids on the night of this incident. As a point of fact, the record is unclear as to what town, county or state all of the vehicles involved in this incident were from.

2. SDCL 22–3–3 provides:

   Any person who, with the intent to promote or facilitate the commission of a crime, aids, abets or advises another person in planning or committing the crime, is legally accountable, as a principal to the crime.

   SDCL 22–18–1.1(5) provides:

   Any person who:

   *   *   *   *   *   *

   (5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm;

   is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

alternative, a motion for a new trial. A motions hearing was conducted on March 26, 1993 and, on April 13, 1993, the trial court entered its order denying the motions.

As his first issue, Koester contends that the trial court erred in denying his acquittal motions because state failed⸱ to offer sufficient evidence to establish he had the specific intent necessary to aid and abet the commission of an aggravated assault. In that regard, Koester argues there was no showing that he had the specific intent to promote or facilitate the commission of an aggravated assault.[3]

> '[The] standard of review on a denial of a motion for judgment of acquittal is whether the state set forth sufficient evidence from which the jury could reasonably find the defendant guilty of the crime charged. In reviewing the sufficiency of the evidence, we consider the evidence in a light most favorable to the verdict. A guilty verdict will not be set aside if the state's evidence and all favorable inferences that can be drawn therefrom support a rational theory of guilt.'

*State v. Ganrude,* 499 N.W.2d 608, 610 (S.D. 1993) (quoting *State v. Blalack,* 434 N.W.2d 55, 59–60 (S.D.1988) (citations omitted).

Koester rests his contention of failure of proof of intent on this court's previous holdings that mere presence at the scene of the crime is insufficient, in and of itself, to establish that one is an aider and abettor in the commission of an offense. *See, e.g., State v. Bradley,* 431 N.W.2d 317 (S.D.1988). Here, Koester asserts that state offered no direct evidence of his specific intent to aid, abet or advise in the commission of an aggravated assault on the occupants of the Dell Rapids car. In essence, he contends the proof at trial merely showed he was present in his vehicle on the interstate during the incident, but, there was no showing that he did anything to promote or facilitate the commission of the aggravated assault. We disagree.

SDCL 22–18–1.1(5) provides:

Any person who:

    \*    \*    \*    \*    \*    \*

(5) Attempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm;

is guilty of aggravated assault. Aggravated assault is a Class 3 felony.

We have previously held that, the gravamen of the offense of aggravated assault under SDCL 22–18–1.1(5) is the *attempt* to put a person in fear of imminent serious bodily harm. *In Interest of A.D.R.,* 499 N.W.2d 906 (S.D.1993); *State v. LaCroix,* 423 N.W.2d 169 (S.D.1988). Under the facts of this case, it is beyond question that the *precise* intent of the drivers of the Elk Point vehicles was to instill in the Dell Rapids students an actual fear of imminent serious bodily harm. That intent was clearly manifested in the acts of boxing the Dell Rapids car in on the interstate and maintaining a blockade in front of it in order to subject the Dell Rapids students to swinging baseball bats and sticks as well as threats, taunts, insults and other humiliations. That the Dell Rapids students were in actual fear for their safety was well established by their testimony during trial and by the testimony of the highway patrolman who interviewed them shortly after the incident.

It follows from the above that any of the drivers of the Elk Point vehicles who boxed in the Dell Rapids vehicle and, thereby, forced its occupants to endure the terrorism that was taking place could have been convicted as principals in the offense of aggravated assault by attempting to put another in fear of imminent serious bodily harm (SDCL 22–18–1.1(5)).[4] That the drivers of those vehicles, at a minimum, manifested an intent to assist, promote or facilitate the assault of the Dell Rapids youths is beyond question.

---

**3.** In Jury Instruction 18, the jury was instructed that:

> In the crime of Aiding, Abetting or Advising Aggravated Assault there must exist in the mind of the perpetrator the specific intent to promote or facilitate the commission of aggravated assault.

> If specific intent did not exist, this crime has not been committed.

**4.** SDCL 22–18–1.1(5)'s requirement of use of a "deadly weapon" will be discussed under Issue 2.

There was clearly sufficient evidence presented to show that Koester was the driver of one of the six vehicles that boxed in the Dell Rapids vehicle while the caravan traveled along the interstate. While the incident was taking place, one of the occupants of the Dell Rapids vehicle read off the license numbers of the blockading Elk Point vehicles while another Dell Rapids student wrote the numbers down. The victim who read the license numbers testified that the numbers were clearly lit and visible. That testimony was verified by testimony from one of the other Dell Rapids students. One of the license plate numbers that was written down was the license number of a vehicle belonging to Koester's father. During his own testimony, Koester acknowledged he was the driver of the vehicle on the night of this incident and that he was traveling on the interstate while the blockade was taking place. Although Koester denied actual participation, this raised only a credibility question. That is a matter within the exclusive province of the jury, *State v. McCord*, 505 N.W.2d 388 (S.D.1993), which, obviously, resolved the issue against Koester. Thus, there is sufficient evidence to support his conviction and the jury's verdict is affirmed on this issue.

## ISSUE 2

DID STATE PRESENT SUFFICIENT EVIDENCE TO ESTABLISH USE OF A DEADLY WEAPON IN THE ASSAULT OF THE DELL RAPIDS STUDENTS?

As his second issue, Koester contends that the trial court erred in denying his acquittal motions because state failed to provide sufficient evidence of use of a dangerous weapon in the assault of the Dell Rapids students.

This argument is meritless. First, Koester contends there is no evidence that could sustain a conclusion that the cars driven during the assault were used as deadly weapons because there was no showing of visible physical injury to the Dell Rapids car. This is an inaccurate statement of the record. There was definitive testimony from the highway patrol trooper who investigated this incident immediately after its occurrence concerning the scratches and dents sustained by the back end of the Dell Rapids car. The trooper further testified that the damage appeared to be fresh. Moreover, the driver of the Dell Rapids car testified that it sustained damage in the approximate amount of $700.

Second, whether damages resulted from the use of an automobile alleged to have been used as a deadly weapon in an aggravated assault is not the test for determining whether the automobile was used as a deadly weapon. In *State v. Barrientos*, 444 N.W.2d 374 (S.D.1989), this court reiterated a previous holding that, " '[a]lthough an automobile is not calculated or designed to inflict death or serious bodily harm, it can be used in a manner that is likely to inflict death or serious bodily harm and, when so used, it constitutes a dangerous weapon within the meaning of SDCL 22–1–2[10].' " *Barrientos*, 444 N.W.2d at 377 (quoting *State v. Seidschlaw*, 304 N.W.2d 102, 105 (S.D.1981)).

There is no question that the manner in which the drivers of the blockading Elk Point vehicles purposely used their vehicles on the night of this incident constituted use, "in a manner likely to inflict death or serious bodily injury." *Barrientos, supra.* It was only a matter of good fortune that the Elk Point drivers did not cause a serious accident on the night of this incident, either for themselves, the Dell Rapids students, or for some innocent traveler making his way from Elk Point to Vermillion or beyond. The facts speak for themselves. A most dangerous weapon was used by all of the Elk Point drivers on the night of this incident, a half ton or so of moving steel that is, under the best of circumstances, only a mistake away from causing tragedy. The misuse of their vehicles by the Elk Point drivers on the night of this incident, however, was no mistake. Therein lies the aggravated assault.

Affirmed.

MILLER, C.J., and WUEST, HENDERSON, SABERS, and AMUNDSON, JJ., participating.