2005 SD 49

**Jeremy Joseph BOEHRNS, Appellant,**

v.

**SOUTH DAKOTA BOARD OF PARDONS AND PAROLES,
Appellee.**

No. 23318.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 2005.

Decided April 20, 2005.

Nichole A. Carper, Sioux Falls, SD, for appellant.

Lawrence E. Long, Attorney General, Sherri Sundem Wald, Assistant Attorney General, Pierre, SD, for appellee.

SABERS, Justice.

[¶1.] Jeremy Boehrns appeals the Board of Pardons and Paroles decision to classify him as a violent offender for parole eligibility under SDCL 24–15A–32. We affirm.

FACTS

[¶2.] On December 23, 1999, Boehrns pleaded guilty to one count of vehicular homicide. While under the influence of alcohol and drugs, Boehrns ran a stop sign while traveling more than fifty miles an hour in a busy intersection in Sioux Falls, South Dakota. He was involved in a violent collision and Curtis Abrahamson was killed. Boehrns was sentenced on February 9, 2000 and received a fifteen year

prison sentence. In pronouncing sentence, the sentencing court indicated:

> Mr. Boehrns, I am going to tell you that because this is a class 3 felony and because I believe it would be classified as a violent offense or a crime of violence that you have to serve fifty percent of that sentence, which is seven years and six months, before you can be eligible for parole.

Upon arriving at the penitentiary, Boehrns was classified as a nonviolent offender. In fact, the record established that no other prisoner in the South Dakota system was classified as a violent offender for a conviction related to vehicular homicide. However, on October 16, 2000, Minnehaha County Deputy States Attorney Gail Eiesland sent a letter and a portion of the sentencing transcript to the Department of Corrections (Department). In that letter she indicated that Boehrns' conviction was deemed a crime of violence by the circuit court. Boehrns' classification was then changed by the Department to "3V" or a class 3 violent offender for the purpose of calculating his parole eligibility. The effect of this classification was that Boehrns was required to serve fifty percent, rather than thirty percent, of his sentence before becoming parole eligible.

[¶ 3.] Boehrns challenged that classification before the Board of Pardons and Paroles (Board). After a hearing on the matter, the Board rejected Boehrns' argument that this was a nonviolent offense and he remained classified as a class 3 violent offender. The Board's findings of fact indicated:

> Boehrns was driving drunk on alcohol and marijuana on June 20, 1999, and caused a violent collision in which Curtis Abrahamson was thrown through the windshield of his car and killed.
>
> The sentencing judge told Boehrns on the occasion of sentencing on February 9, 2000, that the Court viewed this offense as an offense of violence and accordingly 1/2 of the sentence would need to be served before he would become eligible for parole.
>
> Normally a vehicular homicide charge is classified as a non-violent offense by the Department of Corrections and Central Records.
>
> In this case, however, when the Department of Corrections was made aware of the sentencing judge's intentions regarding this being a crime of violence, the initial classification was changed from a class 3 nonviolent to a class 3 violent category.
>
> The facts of the vehicle homicide in this case warrant the determination that this is a crime of violence.
>
> The sentencing court found and determined that this is a case which meets the definition of a crime of violence.

Furthermore, the Board concluded as a matter of law that "vehicular homicide may be categorized as a crime of violence if the facts of the case warrant it" and "an automobile can be properly included within the definition of a dangerous weapon if the facts of the case justify it."

[¶ 4.] Boehrns appealed that decision to the circuit court. On appeal, the circuit court determined that the classification was not clearly erroneous because "under the facts of this case where drugs, alcohol and high speed were involved in the incident, the use of the automobile did rise to the level of the use of a dangerous weapon likely to inflict death or serious injury." Boehrns appeals.

## STANDARD OF REVIEW

[¶ 5.] It is well settled that "[o]ur standard of review from decisions of administrative agencies is governed by SDCL 1-26-37." *Grajczyk v. State*, 2003

SD 74, ¶ 7, 666 N.W.2d 472, 474. This statute provides:

An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

SDCL 1–26–37. Under this standard, "[t]his Court 'makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct.'" *Cheyenne River Sioux Tribe Tel. Auth. v. Public Util. Comm. of South Dakota*, 1999 SD 60, ¶ 12, 595 N.W.2d 604, 608. When the issue is a question of fact, we review the agency's actions under the clearly erroneous standard. *Id.* Issues involving questions of law are fully reviewable by this Court. *Id.* Further, "'[m]ixed questions of law and fact are also fully reviewable.'" *Id.*

## ANALYSIS

### ISSUE

[¶ 6.] **Whether the Department erred in classifying Boehrns' offense as a crime of violence under SDCL 24–15A–32.**

■ [¶ 7.] Boehrns was convicted of vehicular homicide in violation of SDCL 22–16–41. That statute provides:

Any person who, while under the influence of an alcoholic beverage, any controlled drug or substance, or a combination thereof, without design to effect death, operates or drives a motor vehicle of any kind in a negligent manner and thereby causes the death of another person, including an unborn child, is guilty of vehicular homicide. Vehicular homicide is a Class 3 felony. In addition to any other penalty prescribed by law, the court may also order that the driver's license of any person convicted of vehicular homicide be revoked for a period of two years subsequent to release from incarceration.

SDCL 22–16–41. Although the sentencing court made statements indicating its belief that this offense would generally be classified as a crime of violence, the record established the Department did not in fact routinely classify it as such. Only later, when instructed by a Minnehaha County Deputy States Attorney that "Judge Neiles pronounce[d] that vehicular homicide is a crime of violence" did Boehrns' classification change. However, parole is "an executive branch function." *Bergee v. South Dakota Board of Pardons and Paroles*, 2000 SD 35, ¶ 8, 608 N.W.2d 636, 640. As such, the sentencing court's opinion on parole classification was not determinative in this situation.[1] *State v. Pu-*

---

1. SDCL 23A–27–48 provides that the sentencing court "shall state the legal maximum time of imprisonment and the estimated minimum period the defendant must serve before being eligible for parole." The sentencing court here indicated its belief that this would be classified as a crime of violence when informing the defendant of his parole eligibility. However, that was not the final statement on the matter because SDCL 23A–27–48 also rec-

ognizes that the ultimate authority for parole eligibility is vested with the Department.

It appears that the Minnehaha County Deputy States Attorney overstated the sentencing court's determination when corresponding with the Department. The sentencing court indicated "I am going to tell you that because this is a class 3 felony and because I believe it would be classified [by the Board] as a violent offense or a crime of violence that you have to serve fifty percent

*thoff,* 1997 SD 83, ¶ 10, 566 N.W.2d 439, 442. This Court has recognized:

> Sentencing is a judicial act, while parole is a function of an appointed board administered under the direction of the [Board]. It is the parole board's duty to evaluate the inmate's conduct and rehabilitative progress in deciding his eligibility for parole consideration. This is a totally different criteria of thought process than that which confronts a sentencing judge.

*Roden v. Solem,* 411 N.W.2d 421, 422 (S.D. 1987).[2]

[¶ 8.] Therefore, this Court is required to look to the dictates of SDCL ch. 24–15 "the code chapter governing paroles from the penitentiary, an executive branch function." *Puthoff,* 1997 SD 83, ¶ 10, 566 N.W.2d at 442. SDCL 24–15A–32 governs classification of prisoners for parole. That statute provides in relevant part:

> Each inmate sentenced to a penitentiary term, except those under a sentence of life or death, or an indeterminate sentence which is not yet set to a term of years by the board, shall have an initial parole date set by the department. *This date will be calculated by applying the percentage indicated in the following grid to the full term of the inmate's sentence pursuant to §§ 22–6–1 and 22–1–2(9):*

Felony Convictions

| Felony Class | First | Second | Third |
| --- | --- | --- | --- |
| Nonviolent | | | |
| * * * | | | |
| Class 3 | .30 | .40 | .50 |
| * * * | | | |
| Violent | | | |
| * * * | | | |
| Class 3 | .50 | .60 | .70 |
| * * * | | | |

Each inmate shall serve at least sixty days prior to parole release. Inmates with life sentences are not eligible for parole. An initial parole date through the application of this grid may be applied to a life sentence only after the sentence is commuted to a term of years. A class A or B felony commuted to a number of years shall be applied to the Class 1 violent column of the grid.[3]

---

of that sentence." The Deputy States Attorney represented to the Department that "Judge Neiles pronounce[d] that vehicular homicide is a crime of violence."

2. The Board of Pardons and Paroles administrative rules provide:

**17:60:07:01. Application for board review of established parole date.** An inmate who is aggrieved by the parole date established by the Department of Corrections may apply to the board for a review by the board and a determination of the true parole date. The application must be in writing and must specify the inmate's factual and legal contentions concerning the application.

**17:60:07:02. Hearing on application.** Before determining the inmate's true parole date, the board shall provide the inmate with an opportunity to present the inmate's factual and legal arguments at a hearing. Notice of the hearing before the board shall be given to the inmate at least ten days before the hearing.

**17:60:07:04. Evidence at hearing.** The board may consider at the hearing any evidence, affidavit, testimony, letter, or other material not ordinarily admissible in a criminal or civil proceeding.

3. This is the version of SDCL 24–15A–32 in effect when Boehrns was sentenced. It has since been modified in 2001 and 2004. Significantly, the modification in 2001 eliminated the reference to SDCL 22–1–2(9) which defines "crime of violence" to generally include "any other felony in the commission of which the perpetrator used force or was armed with a dangerous weapon." The statute now more specifically provides that:

> The following crimes or an attempt to commit, or a conspiracy to commit, any of the following crimes shall be considered a violent crime for purposes of setting an initial parole date: ... commission of a felony while armed as defined in § 22–14–12 and § 22–14–13.1.

SDCL 24-15A-32 (emphasis added). Turning to SDCL 22-1-2(9) that statute provides:

> (9) "Crime of violence," any of the following crimes or an attempt to commit, or a conspiracy to commit, any of the same: murder, manslaughter, rape, aggravated assault, riot, robbery, burglary in the first or second degree, arson, kidnapping, felony sexual contact as defined in §§ 22-22-7 and 22-22-19.1 *or any other felony in the commission of which the perpetrator used force, or was armed with a dangerous weapon,* or used any explosive or destructive device; [4]

Utilizing this definition, the Board concluded that "vehicular homicide may be categorized as a crime of violence within the above definitions if the facts of the case warrant it." Furthermore, "an automobile can be properly included within the definition of a dangerous weapon if the facts of the case justify it." The Board then found that "the facts of this case warrant the determination that this is a crime of violence." [5] This is consistent with this Court's prior holdings that a vehicle can constitute a dangerous weapon within the meaning of this statute. *See State v. Seidschlaw,* 304 N.W.2d 102, 105 (S.D.1981); *State v. Koester,* 519 N.W.2d 322, 325 (S.D.

1994); *State v. Barrientos,* 444 N.W.2d 374, 377 (S.D.1989).

[¶ 9.] Although this case creates some cause for concern, namely the use of the sentencing court's statements to change the parole classification, the record nevertheless reveals that Boehrns was provided an opportunity to challenge the change in classification before the proper authority. He received a full hearing before the Board where he was represented by an attorney. Significantly, the findings indicate that the Board independently determined this was a crime of violence as defined in their statutory directives. On appeal, the circuit court found that the Board was not clearly erroneous in that determination considering the facts surrounding this felony. Under the circumstances of this case, this decision was not clearly erroneous and we affirm.

[¶ 10.] GILBERTSON, Chief Justice, and KONENKAMP and ZINTER, Justices, concur.

[¶ 11.] MEIERHENRY, Justice, dissents.

MEIERHENRY, Justice (dissenting).

[¶ 12.] I respectfully dissent. The majority points out that this case creates cause for concern. With this, I completely

---

SDCL 22-14-12 applies only to sentencing for the commission of felonies while armed with a firearm. SDCL 22-14-13.1 applies only to the commission of felonies while armed with a stun gun.

4. This statute was also modified in 2001 and 2002.

5. The dissenting opinion's argument that the Department or Board transformed this into a more severe offense by considering the use of the vehicle as a dangerous weapon appears persuasive at first blush. However, this argument does not appreciate the fact that neither the Department nor the Board has, nor do they maintain they possess, any authority whatsoever to change Boehrns' conviction to

anything other than vehicular homicide. That is the crime to which he pleaded guilty and was sentenced to fifteen years in the penitentiary. Rather, the parole eligibility determination reflects a consideration of the facts of that crime within the mandates of SDCL 24-15A-32, as discussed herein, to determine when Boehrns should be parole eligible for that conviction. Contrary to the dissent's assertion, considering the facts of this felony vehicular homicide in light of the statutory definition of "crime of violence" is not the same as determining if he "committed the higher felony of manslaughter or aggravated assault." Dissent ¶ 6.

agree. It is cause for concern because (1) vehicular homicide is not defined in the statutes as a crime of violence, (2) the legislature did not intend vehicular homicide to be considered a crime of violence, and (3) no specific findings of fact were made to support its reclassification as a crime of violence. Tellingly, this has been the only time the Department of Corrections has classified vehicular homicide as a crime of violence when determining parole eligibility.

### Vehicular Homicide, By Definition, Is Negligent Operation of a Vehicle

[¶ 13.] In order for a vehicle to become a "dangerous weapon," we have consistently required it to be operated in more than a negligent manner. We have said that an automobile can be considered a dangerous weapon only in those instances where "the use of the automobile [is] of such a nature that death or serious bodily harm [is] a probable result." *State v. Stetter*, 513 N.W.2d 87, 92 (S.D.1994) (citing *State v. Seidschlaw*, 304 N.W.2d 102, 106 (S.D. 1981)). *See also State v. Barrientos*, 444 N.W.2d 374, 377 (S.D.1989); *State v. Koester*, 519 N.W.2d 322, 325 (S.D.1994).

[¶ 14.] The cases wherein we have approved of a vehicle being considered a dangerous weapon involved either aggravated assault or manslaughter, and the crimes as charged included the specific allegation that the crime was committed with the use of a dangerous weapon. Consequently, the cases relied upon by the majority are clearly distinguishable because in all of those cases the defendants were specifically charged and convicted of crimes that included use of a dangerous weapon as one of the elements of the crime. In other words, in those cases, the judge or jury had to find beyond a reasonable doubt that the defendant committed the crime by using the vehicle as a dangerous weapon.

[¶ 15.] In *State v. Seidschlaw*, a jury convicted the defendant specifically of first-degree manslaughter " 'perpetrated: (3) [w]ithout a design to effect death, but by means of a *dangerous weapon*(.)' " 304 N.W.2d at 105 (citing SDCL 22–16–15) (emphasis added). In *State v. Koester*, a jury convicted the defendant of the crime of aggravated assault by attempting " 'by physical menace with *a deadly weapon* to put another in fear of imminent serious bodily harm.' " 519 N.W.2d at 324 (citing SDCL 22–18–1.1(5)) (emphasis added). In *State v. Barrientos*, the defendant was found guilty of aggravated assault by attempting " 'to cause, or knowingly caus[ing], bodily injury to another *with a dangerous weapon*.' " 444 N.W.2d at 375 (citing SDCL 22–18–1.1(2)) (emphasis added). *See also Stetter*, 513 N.W.2d at 91–92 (defendant convicted of first-degree manslaughter for killing by means of a dangerous weapon). Additionally, in each case the defendant was ultimately convicted of a crime that the statute expressly designated as violent. *See* SDCL 22–1–2(9).

[¶ 16.] In this case, Boehrns pleaded guilty to vehicular homicide. Vehicular homicide by definition involves only negligent operation of a vehicle. Vehicular homicide, as defined by the legislature, is when a person causes the death of another "while under the influence of an alcoholic beverage, ... without design to effect death, operates or drives a motor vehicle of any kind *in a negligent manner*[.]" SDCL 22–16–41 (emphasis added). Boehrns was not adjudicated of using the vehicle in a manner "that death or serious bodily harm was a probable result;" he was adjudicated of driving "in a negligent manner."

[¶ 17.] Additionally, our prior cases are distinguishable because they did not involve the parole eligibility statute at issue here. Unlike the cases cited to by the

majority, here the Department and Board (not a judge or jury) had to engage in its own fact finding to determine whether the crime was a violent offense. The Department or Board would have had to conclude that Boehrns' use was "of such a nature that death or serious bodily harm was a probable result." *Seidschlaw*, 304 N.W.2d at 106. In effect, the Department and Board would be making a post-conviction determination that Boehrns had been more than negligent in the operation of the vehicle and thereby had committed the higher level felony of manslaughter or aggravated assault. This is contrary to our prior cases or statutory directive.

*Legislature Did Not Intend to Define Vehicular Homicide as a Violent Crime*

[¶ 18.] There was no language in the parole eligibility statutes in effect at the time of this conviction that indicated the legislature intended to give the Department or the Board discretion to enhance a felony from nonviolent to violent after the conviction. The parole eligibility scheme was designed to be mandatory and conclusive, in order that anyone could read the statute and know just how long the inmate would have to serve.[6] In fact, the judge was required to announce the parole eligibility at sentencing. SDCL 23A–27–48. The list of violent crimes for purposes of setting parole eligibility was specific. Vehicular homicide was not listed. The following were listed: "murder, manslaughter, rape, criminal pedophilia, aggravated

assault, riot, robbery, burglary in the first or second degree, arson, kidnapping, felony sexual contact as defined in §§ 22–22–7 and 22–22–19.1, felony child abuse as defined in § 26–10–1." SDCL 22–1–2(9). The majority claims that vehicular homicide can be considered as a violent crime because it falls under the general clause of the statute, which further defined a violent crime as "any other felony in the commission of which the perpetrator used force, or *was armed with a dangerous weapon,* . . . ." *Id.*[7] Even if this were the case, the statute does not give the Department or the Board authority to look beyond the conviction, judgment and sentence. Here, Boehrns was not convicted of committing the felony "armed with a dangerous weapon." This cannot be tacked on post-conviction.

*Findings of Fact Not in the Record*

[¶ 19.] The majority affirms the reclassification because the Board made an independent determination that this was a crime of violence. The Board entered one conclusory finding that this was a crime of violence. The Board did not make an independent determination that Boehrns drove the vehicle in a manner that death or serious bodily harm was a probable result, as our prior cases require. The only finding by the Board that dealt with the facts of the case was as follows:

> Mr. Boehrns was driving drunk on alcohol and marijuana on June 20, 1999 and

6. The amendment in 2002, which specifically limited the phrase "armed with a dangerous weapon" to those crimes the defendant committed while armed with a firearm or stun gun, supports the conclusion that the legislature did not intend that setting the date of eligibility would involve discretion.

7. It should be noted that this clause is no longer applicable to the violent crime statute. In 2002, shortly after this case was decided by the Board, the legislature amended the statute by removing the reference to violent crimes as

defined at 22–1–2(9) and instead, specifically listed the violent crimes within the statute itself. The amended statute still does not include vehicular homicide as a violent offense. Further, "armed with a dangerous weapon," was replaced with armed with a firearm, including a machine gun, short shotgun or a stun gun. SDCL 24–15A–32; SDCL 22–14–12; –13.1. Therefore, under the current law, Boehrns' crime unquestionably could not be classified as violent.

caused a violent collision in which Curtis Abrahamson was thrown through the windshield of his car and killed.

The Board took no testimony or evidence concerning the underlying facts of the accident at the hearing. The main argument presented to the Board was based upon the trial court's intentions.

[¶ 20.] There is no dispute in this case that the only reason the Department changed its initial classification from nonviolent to violent was because of a letter it received from the prosecuting Deputy State's Attorney. In the letter, the prosecutor characterized the judge's comment at sentencing as a "pronounce[ment] that vehicular homicide is a crime of violence." The Board's findings indicate that it was relying to a great extent on the trial court's findings.[8] The trial court, however, made no findings. All the trial court did was to inform the defendant at the sentencing hearing of how much time the defendant would have to serve before being eligible for parole, as he was required to do under SDCL 23A–27–48. After imposing the 15 year sentence, the judge told the defendant that the family wanted the judge to impose a sentence of "a term of years without parole;" however, he had no authority to enter such a sentence. The judge then went on to say, "Mr. Boehrns, I'm going to tell you that because this is a Class 3 felony and because I believe it would be classified as a violent offense or a crime of violence that you have to serve 50 percent of that sentence, ..., before you can be eligible for parole." The judge made no further reference to the classification as a crime of violence. He gave no reason for his statement and provided no basis for his belief that it was a crime of

violence. Even if the judge believed this case warranted a reclassification, he had no authority under the law to reclassify it. The statute only gives the Department the authority to set a parole eligibility date and it must do so according to the grid laid out by SDCL 24–15A–32. Consequently, the judge's misstatement at sentencing could not and did not turn the vehicular homicide conviction into a violent crime, nor did it give the Department or Board the authority to reclassify the conviction.

[¶ 21.] The Department has consistently classified vehicular homicide as a nonviolent offense pursuant to statute, except for this one case. The only reason it went against its own procedure was because of a letter from the prosecutor overstating the trial court's actions. To affirm this process is contrary to law. I would reverse the Board and trial court.

---

**8.** The relevant finding of fact states:
In this case, however, when the Department of Corrections was made aware of the sentencing judge's intentions regarding this being a crime of violence, the initial classification was changed from a Class 3 Nonviolent to a Class 3 Violent category.