#30954, #30955, #30956, #30957, #30958, #30959-a-RG

**2026 S.D. 18**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

STATE OF SOUTH DAKOTA,                    Plaintiff and Appellee,

    v.

KOLTEN BRADFORD WARE,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
LAWRENCE COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHELLE K. COMER
Judge

\* \* \* \*

L. ADAM BRYSON
Jefferson City, Missouri                    Attorney for defendant and
    appellant.


MARTY J. JACKLEY
Attorney General

ANGELA R. SHUTE
Assistant Attorney General
Pierre, South Dakota                    Attorneys for plaintiff and
    appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
FEBRUARY 10, 2026
OPINION FILED **03/11/26**

#30954, #30955, #30956, #30957, #30958, #30959

GUSINSKY, Justice

[¶1.] In Appeal No. 30954, Kolten B. Ware was charged with several felony offenses along with a part II information in Lawrence County on January 17, 2024. He ultimately entered into a plea agreement, pleading guilty to three of the five counts in exchange for the dismissal of the other two counts and the part II information. In addition, between March 2024 and October 2024, Ware was charged with several felony offenses in five separate cases (Appeals Nos. 30955 through 30959) and again entered into plea agreements in each of these cases.

[¶2.] Ware now claims he did not knowingly and voluntarily enter into the plea at issue in Appeal No. 30954 because his presentence investigation report (PSI) did not accurately reflect his parole eligibility. He also asserts that his trial counsel led him to believe that he would be eligible for parole after serving fifty percent of his sentence. In addition to his claims related to the plea in Appeal No. 30954, Ware argues the rest of his Lawrence County sentences should be vacated pursuant to the sentencing package doctrine. We entered an order consolidating these appeals. We affirm.

## Factual and Procedural Background

### #30954 – Lawrence County Case No. 40CRI23-1501

[¶3.] Ware's criminal history is extensive. But Ware's latest encounters with law enforcement, which are the subjects of these appeals, began on December 28, 2023. On that date, a Lawrence County Sheriff's deputy was informed that Ware had been involved in an alleged domestic assault in Lead, South Dakota. Before law enforcement arrived, Ware left the scene in a red Jeep Commander.

[¶4.] The Deadwood Police Department located the Jeep in Deadwood, South Dakota. Officer Patrick Kaiser confirmed Ware was in the vehicle and requested that he exit the vehicle. Rather than exiting the vehicle, Ware quickly reversed the Jeep and struck Officer Kaiser's arm before crashing into the officer's patrol vehicle. Ware fled the scene in the Jeep.

[¶5.] Lawrence County Sheriff's deputies soon after located the Jeep traveling at a high rate of speed. The deputies pursued the Jeep but ultimately lost sight of it. Lawrence County dispatch later received a call from an individual claiming her blue Dodge Ram was stolen, and a red Jeep Commander had taken its place. Rapid City Police officers located Ware in a different stolen vehicle (a tan Honda Accord) near the hospital in Rapid City, South Dakota. As police arrived, Ware fled the vehicle on foot and the officers subsequently arrested him.

[¶6.] A Lawrence County grand jury indicted Ware on January 17, 2024, on five felony charges. Pursuant to a plea agreement, Ware entered guilty pleas on September 12, 2024, to the following charges:

> Count I: Grand Theft Value More Than $5,000 but Less Than $100,000 in violation of SDCL 22-30A-1 and 22-30A-17, a Class 4 felony.
>
> Count II: Aggravated Assault Against Law Enforcement Officer in violation of SDCL 22-18-1.1(2) and 22-18-1.05, a Class 2 felony.
>
> Count V: Aggravated Eluding in violation of SDCL 32-33-18.2, a Class 6 felony.

In exchange for the guilty pleas, the State dismissed Count IIIA (aggravated assault) and Count IV (intentional damage to property). At the December 5, 2024, sentencing hearing, the circuit court imposed penitentiary sentences of ten years on

-2-

Count I, twenty years with ten years suspended on Count II, and two years on Count V, all to run concurrently.

### #30955 – Lawrence County Case No. 40CRI24-171

[¶7.] On February 1, 2024, Lead Police Department officers responded to a report of two males fighting at a residence in Lead, South Dakota. The males were not located at the scene, but Ware's girlfriend, A.P., stated that Ware had choked her, grabbed her arm, pushed her, and hit her young daughter and teenage son. Ware had an active no contact order prohibiting him from contacting A.P.

[¶8.] The following day, A.P. alleged Ware had taken her Toyota Sienna from her garage. Deadwood Police officers located the Toyota and attempted a traffic stop, but the driver fled from the officers at a high rate of speed. The officers terminated the pursuit due to unsafe road conditions. Officers located the Toyota later that day after Ware told A.P. where he had left the vehicle.

[¶9.] A Lawrence County grand jury indicted Ware on March 13, 2024, as follows:

> Count I: Aggravated Assault in violation of SDCL 22-18-1.1(8).
>
> Count II: Aggravated Eluding in violation of SDCL 32-33-18.2.
>
> Count IV: Violation of a No Contact Order as a Felony in violation of SDCL 25-10-13.

The State filed a part II information on March 21, 2024, and Ware was arraigned on the allegations and the part II information that same day. The State amended its part II information on April 8, 2024, and removed a Meade County felony conviction from 2017.

[¶10.] Pursuant to a plea agreement, Ware pleaded guilty to Count II (aggravated eluding) and Count IV (violation of a no contact order) on September 12, 2024. On December 5, 2024, the circuit court sentenced Ware to ten years in the state penitentiary on each count. Ware's sentences ran concurrently with one another and all other Lawrence County sentences in this appeal.

### #30956 – Lawrence County Case No. 40CRI24-206

[¶11.] The Lawrence County Sherriff's office arrested Ware again on March 1, 2024, at A.P.'s residence on several outstanding warrants and a violation of a no contact order with A.P. During a search incident to arrest, officers located a needle on Ware's person which field-tested positive for methamphetamine. Laboratory tests later confirmed the substance was methamphetamine.

[¶12.] On March 13, 2024, a Lawrence County grand jury indicted Ware on one count of possession of a controlled drug or substance in violation of SDCL 22-42-5, a Class 5 felony. As in 40CRI23-1501 and 40CRI24-171, the State filed a part II information and amended part II information on March 21, 2024, and April 8, 2024, respectively. On September 12, 2024, pursuant to a plea agreement, Ware pleaded guilty to the charge in the indictment for possession of a controlled drug or substance. Ware was sentenced to ten years in the state penitentiary, concurrent with all other Lawrence County sentences.

### #30957 – Lawrence County Case No. 40CRI24-243

[¶13.] Ware failed to appear at a status hearing scheduled for February 29, 2024. On March 13, 2024, a Lawrence County grand jury indicted Ware on one count of failure to appear on a felony charge in violation of SDCL 23A-43-31, a Class

#30954, #30955, #30956, #30957, #30958, #30959

6 felony.  On March 21, 2024, and April 8, 2024, respectively, the State filed a part II information and amended part II information.  Pursuant to a plea agreement, on September 12, 2024, Ware pleaded guilty to the failure to appear on a felony charge.  The plea agreement dismissed the amended part II information.  On December 5, 2024, the circuit court sentenced Ware to a term of two years to run concurrent to all other Lawrence County sentences.

### #30958 – Lawrence County Case No. 40CRI24-908

[¶14.]       While conducting the investigation in 40CRI24-171, officers discovered that a green Chevrolet pickup had been stolen on February 2, 2024.  The Denver Police Department located the pickup later that day in Denver, Colorado.  The driver of the pickup fled on foot as officers approached the vehicle.  DNA testing later revealed the presence of Ware's DNA on the steering wheel.

[¶15.]       On August 28, 2024, a Lawrence County grand jury indicted Ware on the following charges:

> Count I: Grand Theft Value More Than $2,500.00 but Less Than $5,000.00 in violation of SDCL 22-30A-1 and 22-30A-17(1), a Class 5 felony; or in the alternative
>
> Count IA: Possession of Stolen Vehicle in violation of SDCL 32-4-5, a Class 5 felony.

Pursuant to a plea agreement, Ware pleaded guilty to Count I (grand theft) on September 12, 2024.  Additionally, the State filed an information on August 29, 2024, for two misdemeanor counts and an amended part II information with six prior felonies.  The State later dismissed the two misdemeanor counts and the amended part II information.  On December 5, 2024, the circuit court sentenced

#30954, #30955, #30956, #30957, #30958, #30959

Ware to five years in the state penitentiary, concurrent with all other Lawrence County sentences.

### #30959 – Meade County Case No. 46CRI24-1006

[¶16.] In October 2023, Ware began distributing fentanyl to one of his friends, E.G. In early December 2023, A.P. informed Ware that E.G. was unwell. Ware believed E.G. had overdosed. Later that day, Ware and A.P. learned that E.G. had died. Ware and A.P. left South Dakota for Colorado. Ware returned on December 28, 2023, and was arrested on the charges in Lawrence County Case No. 40CRI23-1501.

[¶17.] The State made an offer to Ware agreeing to dismiss potential charges relating to E.G.'s death if he pleaded guilty to a charge of conspiracy to distribute a controlled substance. On October 16, 2024, Ware pleaded guilty to the charge of conspiracy to commit possession of a controlled drug or substance with intent to distribute–fentanyl. The circuit court sentenced Ware to ten years in the state penitentiary, to run consecutive to the sentences imposed by the Lawrence County circuit court.

[¶18.] Ware now argues that he did not enter his guilty plea knowingly and voluntarily in 40CRI23-1501 because his PSI stated he would be eligible for parole after serving seventy-five percent of his sentence. When Ware arrived at the penitentiary, he discovered SDCL 24-15-4.1(12) made him ineligible for parole, and he would have to serve his entire ten-year sentence in Lawrence County file 40CRI23-1501. Ware's brief also stated: "Mr. Ware informed appellant [sic] counsel that he was advised that he would only have to serve fifty percent of the sentence

-6-

imposed by his trial counsel [sic] and court services [sic] via his presentence investigation report (PSI)." Thus, Ware's claims regarding his understanding of his parole eligibility are not consistent, but for the reasons set forth below, such inconsistency does not affect our review of Ware's appeals.

[¶19.]        Ware raises two issues on appeal, which we restate as follows:

      1.      Whether Ware knowingly and voluntarily entered guilty pleas in 40CRI23-1501.

      2.      If Ware prevails in Appeal No. 30954, whether the sentences in the other Lawrence County files, which were part of a global plea agreement, should be vacated due to the application of the sentencing package doctrine.

**Standard of Review**

[¶20.]        "An alleged violation of a defendant's constitutional right to due process is reviewed de novo." *State v. King*, 2014 S.D. 19, ¶ 4, 845 N.W.2d 908, 910 (citing *State v. Tiegen*, 2008 S.D. 6, ¶ 14, 744 N.W.2d 578, 585). "[O]n a direct appeal from a conviction the defendant is entitled to all presumptions and protections possible under our constitution." *Id.* (citation omitted). When reviewing a guilty plea, "we examine the totality of the circumstances, using an objective standard, and determine if the plea was knowingly and voluntarily given." *Id.* ¶ 6.

**Analysis and Decision**

[¶21.]        In determining whether Ware knowingly and voluntarily entered his plea, we must examine the totality of the circumstances, statutory requirements, and the record. Ware's second claim—that the Lawrence County files should be vacated due to the application of the "sentencing package doctrine"—is triggered

only if we find he did not enter his guilty plea in 40CRI23-1501 (aggravated assault against a law enforcement officer) knowingly and voluntarily.

### 1. Whether Ware knowingly and voluntarily entered guilty pleas in 40CRI23-1501.

[¶22.] "To be knowing and voluntary, the record must affirmatively show a free and intelligent waiver by the defendant of his constitutional rights against self-incrimination, right to confront witnesses, right to a jury trial, and evidence that the defendant understood the nature and consequences of his guilty plea." *Id.* ¶ 6 (citation omitted). A guilty plea is knowing and voluntary "when the accused has a full understanding of his constitutional rights and, having that understanding, waives these rights by a plea of guilty." *State v. Outka*, 2014 S.D. 11, ¶ 32, 844 N.W.2d 598, 607 (citation omitted).

[¶23.] "When assessing voluntariness, we do not consider a defendant's after-the-fact regret about his decision to plead guilty. Rather, we review the defendant's competency to waive his constitutional rights and his appreciation of the consequences of pleading guilty at the time of the plea." *State v. Trueblood*, 2024 S.D. 17, ¶ 15, 5 N.W.3d 571, 576 (citation omitted).

[¶24.] We are also guided by the statutory requirements imposed by SDCL 23A-7-4. Most relevant here is SDCL 23A-7-4(1), which requires the defendant to understand "[t]he nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law[.]" Nothing in SDCL 23A-7-4 requires courts to advise defendants on parole eligibility. In fact, in 2011, the South Dakota Legislature repealed a law that required judges to "state the legal maximum time of imprisonment and the

estimated minimum period the defendant must serve *before being eligible for parole* pursuant to chapter 24-15." *See* SDCL 23A-27-48 (repealed) (emphasis added).

[¶25.] The Lawrence County circuit court explicitly asked Ware if he understood his rights on January 25, 2024, and September 12, 2024. Ware answered in the affirmative. The circuit court then advised Ware of the three constitutional rights he was waiving: the right to a jury trial, the right to confront and cross-examine witnesses, and the right to remain silent. The circuit court's explanation of these constitutional rights complied with the requirements set forth in our own precedent in *King* and under the United States Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969).

[¶26.] As required by SDCL 23A-7-4(1), the circuit court also advised Ware of the potential maximum and minimum penalties for his crimes. As a result of the plea agreement, Ware faced a maximum of seventy-nine years of imprisonment on eight felony charges to which he pleaded guilty.[1] After this colloquy with Ware, the circuit court found that "said plea was voluntar[y], knowing and intelligent; that Defendant was represented by competent counsel; that the Defendant understood the nature of consequences of the plea at the time said plea was entered[.]" As we stated in *State v. Nikolaev*, "[t]his is all that is required." 2000 S.D. 142, ¶ 12, 619 N.W.2d 244, 247 (holding advisement on constitutional and statutory rights under SDCL 23A-7-5 was sufficient for a knowing and voluntary plea). Also relevant to Ware's appeal is that the Lawrence County circuit court never indicated that it

---

1. This maximum presumes consecutive sentences and includes the Lawrence County and Meade County cases.

#30954, #30955, #30956, #30957, #30958, #30959

would be bound by the recommendations contained in the plea agreements.[2] *State v. Scott*, 2024 S.D. 27, ¶ 18, 7 N.W.3d 320, 327 ("[G]enerally circuit courts are not bound by plea agreements." (citation omitted)).

[¶27.] SDCL 24-15-4.1(12) eliminated parole eligibility for defendants who committed "[a]ggravated assault against a law enforcement officer" after July 1, 2023. Ware assaulted Officer Kaiser with his vehicle on December 23, 2023. Thus, Ware was not eligible for parole in the aggravated assault count against Officer Kaiser.

[¶28.] In *State v. Outka*, we explained that "it is not necessary for a court to inform a defendant of the collateral consequences of a guilty plea in order for a plea to be intelligently and voluntarily entered." 2014 S.D. 11, ¶ 39, 844 N.W.2d at 609 (quoting *State v. Timperley*, 1999 S.D. 75, ¶ 15, 599 N.W.2d 866, 868). An analysis of whether the plea was entered into knowingly and voluntarily emphasizes the "direct" consequences of entering a plea. *See id.* In *Turner v. Weber*, we held parole eligibility is a collateral consequence rather than a direct one. 2001 S.D. 125, ¶ 15, 635 N.W.2d 587, 592. Therefore, a circuit court is not required to inform a defendant of his or her parole eligibility or the lack thereof. *Id.*

[¶29.] Further undermining Ware's argument is SDCL 24-15-1.1, which states that "[a] prisoner is never entitled to parole." SDCL 24-15-1.1 also proclaims

---

2.  The Meade County plea agreement was not binding on the circuit court as well but is not discussed here because Ware's claim regarding the lack of a knowing and voluntary plea is in regard to Lawrence County case 40CRI23-1501.

that "neither [this statute] or its application may be the basis for establishing a constitutionally protected liberty, property, or due process interest in any prisoner."

[¶30.] Indeed, Ware's claim that his plea was not knowing or voluntary is not based on actions taken by the circuit court, but rather his unsubstantiated reliance on his counsel's representation that he would be eligible for parole after serving fifty percent of his sentence, as well as his reliance on the PSI's representation that he would be eligible after serving seventy-five percent of his sentence. Without evidence to the contrary, "it is assumed that legal counsel has explained the consequences of a guilty plea to a defendant." *State v. Goodwin*, 2004 S.D. 75, ¶ 14, 681 N.W.2d 847, 853. At sentencing, Ware's counsel told the circuit court that he and Ware read through the PSI and did not request any changes or clarifications.

[¶31.] Regardless of the advice Ware's counsel did or did not provide him about parole eligibility, our precedent establishes that misinformation alone does not render his plea unknowing or involuntary. In *Turner v. Weber*, we upheld a plea agreement despite the trial court misinforming the defendant on his eligibility for parole. 2001 S.D. 125, ¶¶ 4–5, 635 N.W.2d at 589 (finding the trial court incorrectly told the defendant he would be eligible for parole after ten years rather than the thirteen years required by statute). Similarly, we have held that a "sentencing court's [incorrect] opinion on parole classification [is] not determinative." *State v. Semrad*, 2011 S.D. 7, ¶ 7, 794 N.W.2d 760, 763 (alterations in original) (citing *Boehrns v. S.D. Bd. of Pardons & Paroles*, 2005 S.D. 49, ¶ 7, 697 N.W.2d 11, 13). The record does not show the circuit court ever addressed parole eligibility at the sentencing hearing. Rather, Ware's misunderstanding regarding parole stems from

his alleged conversations with trial counsel and the PSI. In any case, pursuant to *Turner* and *Semrad*, the lack of disclosure by the circuit court cannot create an unknowing or involuntary plea "because parole is not a judicial power: it is an executive act." *Id.*

[¶32.]    Moreover, the PSI disclaimed potential inaccuracies by stating: "[t]he following calculations on parole eligibility are based on the highest level of felony the Defendant pleaded to in each matter. They may not *accurately reflect parole eligibility* that will be determined by the Department of Corrections." (Emphasis added.) The PSI put Ware on notice regarding potential inaccuracies as to parole eligibility. The PSI also gave Ware notice that the Department of Corrections would make the final parole evaluation rather than the circuit court or another party. *Turner* and *Semrad* likewise demonstrate that neither the inaccuracies within the PSI nor the circuit court's failure to correct the inaccuracy render the entry of the plea unknowing or involuntary. Ware cannot claim he acted without knowledge or involuntarily when he chose to rely on a potentially inaccurate PSI.

[¶33.]    Ware argues he would not have entered into the plea agreement had he known of the inaccuracies because "the time incarcerated prior to parole eligibility is a significant factor in a defendant's decision to enter into a plea agreement[.]" But he had multiple other incentives for entering his plea aside from parole eligibility. Without the plea agreement, Ware faced a life sentence[3] plus a

---

3.    Count 2 in 40CRI23-1501 (aggravated assault on law enforcement officer) is a Class 2 felony. Together with a 2-step enhancement as a result of the amended part II information, the felony is punishable as a Class C felony, a sentence of up to life.

term of 230 years on his felony charges. The plea agreement recommended that Ware receive concurrent sentences, which reduced the length of his sentence significantly. In addition, the plea agreement contained lower sentencing recommendations and the dismissal of several felony charges alongside selected part II informations. The plea agreement also dismissed multiple misdemeanor charges.

[¶34.] Ware's argument that he relied on "his" understanding of parole eligibility when he entered his plea is not supported by the realities of his predicament. The plea agreement was not binding on the circuit court, and the record is devoid of any indication that the circuit court expressly or implicitly agreed to be bound by the recommendations contained in the plea agreement. The circuit court advised Ware of the maximum penalties for each count. Even if Ware's understanding of his parole eligibility was as he claims, the circuit court could have imposed up to seventy-nine years of incarceration. It is nonsensical for Ware to argue that he expected to be parole eligible after serving fifty percent of a ten-year sentence when there was no guarantee that the circuit court would follow the sentencing recommendations in the non-binding plea agreement.

[¶35.] Also, the timing of Ware's plea shows he could not have relied on the PSI. Ware entered his guilty plea on September 12, 2024. The PSI is dated November 27, 2024. Nothing in the record establishes that Ware was told he would only serve fifty percent or seventy-five percent of his sentence before he entered his plea. Therefore, the inaccurate PSI could not have induced Ware to plead guilty.

[¶36.] Finally, we must examine the totality of the circumstances. We evaluate "'the procedure and in-court colloquy' and 'other factors including the defendant's age; his prior criminal record; whether he is represented by counsel; the existence of a plea agreement; and the time between advisement of rights and entering a plea of guilty.'" *King*, 2014 S.D. 19, ¶ 6, 845 N.W.2d at 910 (quoting *Monette v. Weber*, 2009 S.D. 77, ¶ 12, 771 N.W.2d 920, 925).

[¶37.] Our evaluation of the factors leads us to conclude that Ware entered his plea knowingly and voluntarily. He was thirty-one years old at the time of his sentencing. Ware had an extensive criminal record with seven prior felonies before this sentence. He was represented by counsel throughout the pendency of the case. Ware had two plea agreements, one in Lawrence County and the other in Meade County. The Lawrence County circuit court advised Ware of his constitutional and statutory rights in January 2024 and again when he changed his plea on September 12, 2024. Accordingly, we find that Ware's plea in 40CRI23-1501 was knowing and voluntary. Because Ware did not prevail on his first issue, his second issue regarding the sentencing package doctrine[4] is moot.

---

4.    We have never addressed the sentencing package doctrine. "Under that doctrine, interdependent sentences create a coherent sentencing package, and the reversal on appeal of one count may render the underlying package voidable." *United States v. Sprenger*, 14 F.4th 785, 794 (7th Cir. 2021) (citation omitted). "But the 'sentencing package doctrine generally applies to sentences with interdependent, consecutive counts, and not to concurrent sentences.'" *Id.* (citation omitted). We provide this explanation as background only and in no way suggest that we embrace or reject the applicability of this doctrine in South Dakota.

**Conclusion**

[¶38.]     We conclude that Ware entered his plea knowingly and voluntarily. Accordingly, we affirm the judgment of the circuit court in 40CRI23-1501. Ware's other appeals (Nos. 30955 through 30959) required him to prevail in Appeal No. 30954, which he did not. Therefore, we affirm the judgments of the circuit court in Appeals Nos. 30955 through 30959.

[¶39.]     JENSEN, Chief Justice, and SALTER, DEVANEY, and MYREN, Justices, concur.